**Everett L. Goodwin, Plaintiff-Appellee, v. Wabash Railroad Company, Defendant-Appellant.**

**Gen. No. 48,310.**

First District, Second Division.

December 5, 1961.

Lord, Bissell & Brook, of Chicago (Gordon R. Close, Jay M. Smyser and Richard E. Mueller, of counsel), for appellant.

James A. Dooley, of Chicago, for appellee.

MR. JUSTICE BRYANT delivered the opinion of the court:

This is an appeal from a judgment on the verdict against the defendant in the amount of $40,000 and from an order denying defendant's post-trial motion for judgment notwithstanding the verdict. Defendant contends that there was not even a scintilla of evidence that he was negligent in allowing plaintiff-employee to do his job at the time of the accident in the manner he was doing it.

The action was instituted under the Federal Employers' Liability Act, and the only basis which can be used for entering a judgment notwithstanding the verdict is one where there is a complete absence of probative facts to support the favorable finding of the jury. Bowman v. Illinois Cent. R. Co., 11 Ill2d 186, 142 NE2d 104; Lavender v. Kurn, 327 US 645; Hall v. Chicago & N. W. Ry. Co., 5 Ill2d 135, 125 NE2d 77.

The plaintiff was injured when he was installing an automatic air brake valve in a cab of a diesel engine owned by the defendant and which was being overhauled in the defendant's shop. Such valves were delivered and installed either in three separate pieces or in one assembled piece. When it was in three

pieces each of two pieces weighed about 80½ pounds and the third piece weighed 119 pounds. When assembled its weight was the total of the component parts. In this case it was installed by the manual method, but it was questioned whether there was a choice left the plaintiff or whether it depended on other things such as a classification of the kind of work. Where the valve was delivered to the cab of the engine in three pieces, the manual method was indicated; and where the valve was delivered in an assembled piece, the jack device method was indicated. It was argued that there had been alternative methods to the manual method which would relieve the defendant from negligence as to methods or place of work if the plaintiff made a choice in these matters. However, it was contended that the plaintiff did not have an alternative but to use the hand method and there was evidence from which the jury could properly infer that the method of installation was fixed by the defendant when the brake mechanism was assembled in the air room and sent in three pieces to the cab.

On this point the testimony of George Scrivner, who usually did the work, showed that it was up to the foreman. If the valve was delivered from the air room in sections, the manual method was employed. Whenever it was delivered as a whole unit, it was set in as a whole and the jack lifting device was used. "It was just what the foreman determined." Herman Grolla, who was the plaintiff's helper in the operation, testified that the foreman always gave instructions as to the method. If the valve was in sections when such instructions were received, it would be installed that way. If the valve was assembled, it would be installed with the lifting device. He testified that neither the machinist nor the machinist's helper had anything to do with whether the valve would be delivered in sections or not.

351.

Again Scrivner and the plaintiff testified that unless the engineer's seat had been removed from the cab the lifting device could not be used, and that neither he nor the machinist or his helper had anything to do with the removal of the seat, and that the foreman would have to inform the foreman of the carpenter's or other craft unit to have the seat removed.

Clearly there was evidence that the plaintiff had to do the work as the piece was delivered unassembled in the way he did it, that is by the manual method. He had no choice but to follow the foreman's directions, contained in his actions as if they had been spoken, in having the automatic air brake valve delivered in three parts. As a result of the selection of method of installation and the fact that the engineer's seat was not removed, the plaintiff was compelled to work with heavy weights in cramped confines and in strained and awkward positions.

According to the testimony, without the engineer's seat removed only one man could install the valve because of the cramped quarters. The installer had an area of 18 to 24 inches in which to maneuver, and had to lift the three sections and lean over and down to align them on the studs. The footing was awkward because of the pipe on the floor, the feet had to be spread, and the weight had to be borne by the chest and arms. To get alignment on the studs it was often necessary to do a lot of lifting up and down of the heavy sections. Plaintiff testified: "With the third and last piece I raised up in the same manner off my feet like that, and I started to put it on there and I fell back in my seat. I experienced a sharp pain in my chest, and broke out in a sweat. I was just gulping for air. I have never experienced such a sensation before." Defendant had recognized the dangerous place and method of work by devising the mechanical

lifting device as a result of complaints about the manual method. Nevertheless, defendant implicitly selected the manual method and failed to have the seat removed in the instant case. Defendant, not plaintiff, controlled these decisions. The failure to furnish an alternative method of doing the work which was always available to the men was negligence on the part of the railroad. There was evidence that defendant had not furnished this alternative method and place in the instant case.

██ It is firmly established in FELA cases that a railroad has the duty to use due care in furnishing its employees with a safe place to work. Anderson v. Elgin, J. & E. R. Co., 227 F2d 91. Defendant cannot avoid this duty by claiming that other workers or other railroads used the manual method of installation. As stated in Hack v. New York, Chicago & St. Louis R. Co., 27 Ill App2d 206, at 221, 169 NE2d 372:

> "It is elementary law that the fact that any number of persons have escaped injury where a dangerous condition exists cannot be used as a basis for determining whether or not danger existed which, if injury resulted, would have substantiated an action for negligence on the part of the injured person. . . ."

It was held in Ellis v. Union Pacific R. Co., 329 US 649, at 653:

> ". . . once there is a reasonable basis in the record for concluding that there was negligence which caused the injury, it is irrelevant that fair minded men might reach a different conclusion. For then it would be an invasion of the jury's function for an appellate court to draw contrary inferences or to conclude that a different conclusion would be more reasonable . . ."

The Supreme Court of the United States discussed the question of negligence in FELA cases in Rogers v. Missouri Pacific R. Co., 352 US 500, at 507, 508, as follows:

"The law was enacted because the congress was dissatisfied with the common-law duty of master to his servant. The statute supplants that duty with the far more drastic duty of paying damages for injury or death at work due in whole or in part to the employer's negligence. The employer is stripped of his common-law defenses and for practical purposes the inquiry in these cases rarely presents more than the single question whether negligence of the employer played any part, however small, in the injury or death which is the subject of the suit. The burden of the employee is met, and the obligation of the employer to pay damages arises, when there is proof, even though entirely circumstantial, from which the jury may with reason make the inference."

We therefore conclude that there was evidence that the use of the manual method in cramped quarters was required by the defendant and the jury could reasonably infer from such evidence that the employer was negligent in failing to provide a safe method or place of work.

The relationship between the injury and the disability was one for the jury. The language in Rogers v. Missouri Pacific R. Co., supra, states at page 507:

". . . Judicial appraisal of the proofs to determine whether a jury question is presented is narrowly limited to the single inquiry whether, with reason, the conclusion may be drawn that negligence of the employer played any part at all in

the injury or death. Judges are to fix their sights primarily to make that appraisal and, if that test is met, are bound to find that a case for the jury is made out whether or not the evidence allows the jury a choice of other probabilities. The statute expressly imposes liability upon the employer to pay damages for injury or death due 'in whole or *in part*' to its negligence."

The judgment is affirmed.

FRIEND, P. J. and BURKE, J., concur.