Jack S. Mitchell, Plaintiff-Appellant, v. Missouri Pacific Railroad Company, a Corporation, Defendant-Appellee.

Gen. No. 67–14.

Fifth District.

December 30, 1968.

Meyer & Meyer, of Belleville, and Jo B. Gardner, of Monett, Missouri, for appellant.

Walker & Williams, and Edward Maag, of East St. Louis, and Mark Hennelly, James A. Hesse, and Charles P. Lippert, of St. Louis, Missouri, for appellee.

MORAN, J.

Plaintiff appeals from a verdict directed in favor of the defendant at the close of all of the evidence by the Circuit Court of St. Clair County.

Plaintiff sued under the Federal Employers' Liability Act, 45 USC, section 51, which reads in pertinent part:

"Every common carrier by railroad while engaging in commerce . . . shall be liable in damages to any person suffering injury while he is employed by such carrier in commerce . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track roadbed, works, boats, wharves or other equipment."

Plaintiff alleged in his complaint that he was employed in interstate commerce as a laborer by the defendant, a common carrier; that he was required to scrape bird droppings and other foreign substances from defendant's bridge and in so doing the air became polluted with particles of bird droppings and other foreign substances which resulted in plaintiff's inhaling the foreign substances whereby he was caused to contract certain diseases. He further alleged that the defendant was negligent in one or more of the following respects:

"A. It failed to furnish plaintiff with a mask or other item to prevent inhalation of said foreign substances.

144

"B. It failed to furnish plaintiff with adequate and sufficient tools to perform said work without polluting the air.

"C. It failed to warn plaintiff of the dangers inherent in so performing his work.

"D. It failed to take any measure or do any act to prevent said pollution."

In Sinkler v. Missouri Pac. R. Co., 356 US 326, 2 L Ed 799, 78 S Ct 758, the United States Supreme Court said at page 802: "However in interpreting the FELA, we need not depend upon common-law principles of liability. This statute, an avowed departure from the rules of the common law (cases cited) was a response to the special needs of railroad workers who are daily exposed to the risks inherent in railroad work and are helpless to provide adequately for their own safety. (Cases cited.) The cost of human injury, an inescapable expense of railroading, must be borne by someone, and the FELA seeks to adjust that expense equitably between the worker and the carrier." This language was reiterated in Hopson v. Texaco, 383 US 262, 15 L Ed2d 740, at 742, 86 S Ct 765.

In Tennant v. Peoria & P. U. Ry. Co., 321 US 29, 88 L Ed 520, 64 S Ct 409, the Court said at page 412:

"It is the jury, not the court, which is the fact-finding body. It weighs the contradictory evidence and inferences, judges the credibility of witnesses, receives expert instructions, and draws the ultimate conclusion as to the facts. The very essence of its function is to select from among conflicting inferences and conclusions that which it considers most reasonable. (Cases cited.)"

In Rogers v. Missouri Pac. R. Co., 352 US 500, 1 L Ed 2d 493, 77 S Ct 443, the Court said at page 499:

145

"Under this statute the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought. It does not matter that, from the evidence, the jury may also with reason, on grounds of probability, attribute the result to other causes, including the employee's contributory negligence. Judicial appraisal of the proofs to determine whether a jury question is presented is narrowly limited to the single inquiry whether, with reason, the conclusion may be drawn that negligence of the employer played any part at all in the injury or death."

Plaintiff contends that there was sufficient evidence in the trial court to furnish an evidentiary basis for a jury to find that defendant had actual or constructive knowledge of the danger of plaintiff's contracting histoplasmosis from his employment and that therefore the defendant had a duty to warn plaintiff of this danger or in the alternative it had a duty to furnish plaintiff with some type of machine or respirator to minimize the danger of contracting histoplasmosis from inhalation.

Defendant contends that there was no evidence from which it could have been concluded with reason that defendant should have foreseen any harm to the plaintiff from the performance of plaintiff's work, that there was no evidence that defendant knew or should have known of the disease of histoplasmosis or that defendant knew or could have known of the relationship between this disease and bird droppings.

In Urie v. Thompson, 69 S Ct 1018, the United States Supreme Court held that an occupational disease was an injury within the meaning of the Federal Employers' Liability Act, saying at 1033:

146

"In our view, when the employer's negligence impairs or destroys an employee's health by requiring him to work under conditions likely to bring about such harmful consequences, the injury to the employee is just as great when it follows, often inevitably, from a carrier's negligent course pursued over an extended period of time as when it comes with the suddenness of lightning. Silicosis is as much 'injury,' leading in time as certainly to permanent disability, as scalding from a boiler's explosion. We do not think the mere difference in the time required for different acts of negligence to take effect and disclose their harmful, disabling consequences would justify excluding the one type of injury from the Act's coverage or that such an exclusion would be consistent with its language, purposes, or unvarying standards of construction."

 In FELA cases the rule is that a verdict in plaintiff's favor must stand when there is any evidence considered in the light most favorable to plaintiff that defendant was guilty of negligence which contributed in whole or in part to the injury. Finley v. New York Cent. R. Co., 19 Ill2d 428, 167 NE2d 212. In Hausrauth v. New York Cent. R. Co., 401 F2d 634 (1968), the United States Court of Appeals said at 638:

"We do not seek to provide mandatory language for judicial charges in FELA cases. Different fact situations require different approaches. And we trust trial judges will always have somewhat differing styles. But since Congress has deliberately established a more protective principle for railroad employees than that of the common law, it is reversible error for a judicial charge to fail to employ and emphasize both the 'in whole or in part' causal lan-

147

guage of the statute and the interpretative language of the Supreme Court in the Rogers case."

Plaintiff's evidence established that histoplasmosis is a lung disease carried by inhalation of the dust from dried bird droppings; that plaintiff's duties involved brushing and scraping bird droppings from the beams and braces of defendant's railroad bridges; that X rays were taken of his chest shortly before April 27, 1960, which disclosed no abnormal appearance of his lungs; that he was examined by a doctor on May 27, 1963, and found to have histoplasmosis. The doctor described the ailment as a fungus type disease which is quite prevalent in most of Missouri, Eastern Kansas, Northern Arkansas and Northeast Oklahoma; that this fact was well known to medical science for the past 15 or 20 years. In answer to a hypothetical question the doctor testified that in his opinion the dust inhaled by plaintiff during his work for defendant carried the fungus which produced plaintiff's illness. Other evidence disclosed that the first published case of histoplasmosis was in 1906 and that up until 1945 there had been 71 cases reported. By 1959 most doctors were aware of the disease and in the early 1950's a reported 30 million people in this country had the infection, although in most cases it was dormant.

Construing the evidence on behalf of plaintiff most favorably to him, we believe there was ample evidence to justify a jury in finding that plaintiff contracted histoplasmosis from his employment and that his employer knew or should have known of the danger of his so doing.

Defendant argues that plaintiff was working in an endemic area and that the evidence disclosed that there was no known way to take protective means that would prevent a person from being exposed to or contracting this disease in an endemic area. Surely the jury could find that even though plaintiff was working

148

in an endemic area, the risk of exposure to the disease of histoplasmosis was magnified by the nature of his work which required him to scrape bird droppings from defendant's bridges thereby increasing the probability of acquiring the disease by inhalation. If the danger existed, defendant had a duty to warn if he knew or should have known the danger, even though there was nothing that defendant could have done to lessen the danger.

In Dowler v. New York, C. & St. L. R. Co., 5 Ill2d 125, 125 NE2d 41, our Supreme Court said at 130–131:

". . . The rule is concisely stated in 56 CJS, Master and Servant, sec 284, as follows: 'It is the duty of the master to warn and instruct his servant as to defects and dangers of which he knows, or ought, in the exercise of reasonable care and diligence, to know, and of which the servant has no knowledge, actual or constructive; prima facie this duty requires the master to warn and instruct the servant with reference to all abnormal or unusual, peculiar or extraordinary risks or hazards of the employment, and, where the business is complex or dangerous in its nature, the master is bound to point out to servants the particular defects and dangers incident thereto. Whether warning or instruction is necessary may depend on the age, intelligence, and experience of the employee, as well as on the nature of the danger, the character of the work, and the surrounding conditions and circumstances, but the duty does not depend on custom. Where there is a duty to warn, the master is negligent where he fails so to warn, and he cannot escape responsibility for his failure, even though the danger is one which in the ordinary course of business cannot be avoided, or by reason of his having used the utmost care to reduce the danger as much as possible, nor is it material how or by whom the dangerous conditions

149

were created or that the servant could not have avoided the danger had he known of it.' "

Defendant also argues that there is no evidence in the record that the defendant knew or with reasonable care could have known that plaintiff was in any way exposed to any harm or ill-being from performing the work in the manner that it was done, because there was no proof that the defendant knew or had reason to know of a person ever before becoming ill or being in any way adversely affected by performing this or similar work in the manner it was being performed.

Crowley v. Elgin, J. & E. Ry. Co., 1 Ill App2d 481, 117 NE2d 843, was a case brought under the FELA to recover for injuries which plaintiff sustained from occupational contact dermatitis allegedly caused by petroleum and chromates repeatedly coming in contact with plaintiff's skin. The plaintiffs secured judgments from which the defendant appealed. The action was predicated upon the alleged violation of the FELA in that the defendant was charged to be negligent in failing to take reasonable precautions discoverable by the exercise of ordinary care, to protect plaintiffs from the occupational hazard inherent in their work in and around diesel fuel and lubricating oils. Defendant claimed there, as the defendant does in the present case, that it could not be held liable for the contact dermatitis because the evidence failed to prove that it had actual or constructive knowledge of the hazard of dermatitis. It was established that prior to plaintiff's injuries there had been no reported cases of a railroad employee contracting contact dermatitis from diesel oils or coating solutions. After a lengthy discussion of the facts and the legal principles involved in Urie v. Thompson, supra, the Appellate Court held that it was a question of fact for the jury as to whether or not the defendant could or might have known of the dangers to the plaintiffs from the exposure

to the diesel oils and chromates. Certiorari was denied by the United States Supreme Court.

In Del Raso v. Elgin, J. & E. Ry. Co., 84 Ill App2d 344, 228 NE2d 470, plaintiff brought an action under the FELA to recover for injuries they incurred from lead poisoning they sustained while in the employ of the defendant railroad. It was also contended in that case that there was insufficient evidence to show that it knew or should have known of the presence of lead paint on the railway cars and that the court erred in refusing to instruct the jury on the issue of defendant's lack of knowledge of the hazard of lead poisoning. The Appellate Court said at page 362:

> "It is common knowledge that fumes from burning paint often carry noxious and toxic gases which can through constant exposure cause illness. From this it can be reasoned that since it is not necessary that the tortfeasor foresee the particular harm which befalls plaintiff, but that the tortfeasor saw or should have seen the general danger and taken precautions; therefore, the defendant in the instant case cannot maintain that because the specific hazard of lead poisoning was not foreseen, defendant was not generally failing to act with due care for the safety of the plaintiffs.
>
> "The employer is presumed to know the nature of the material it places in the employees' hands."

In Gallick v. Baltimore & O. R. Co., 372 US 108, 9 L Ed2d 618, 83 S Ct 659, the Court said at 628:

> "In the second place, in deciding whether respondent had reason to anticipate and foresee any harm to petitioner, the trial court instructed the jury to take into account 'the past experience respecting the location and conditions in question' and the fact 'that no occurrence of the kind here alleged either

occurred, or was known by defendant to have occurred, at or near this place before August of 1954.' The jury thus might have determined that, since there had been no similar incidents at this pool in the past, the respondent had no *specific* 'reason' for anticipating a mishap or injury to petitioner—a far too *narrow* concept of foreseeable harm to negative negligence under the Federal Employers' Liability Act." (Emphasis added.)

Defendant also argues that it cannot be held to the standard of a specialist in the field of medicine and therefore cannot be held to have knowledge of the disease of histoplasmosis because there is no evidence the defendant knew or should have known of the disease; the fact that the disease was known to the medical profession does not charge the defendant with knowledge.

In Crowley, supra, the Appellate Court quoted with approval the following language from Baumgartner v. Pennsylvania R. Co., 292 Pa 106, 140 A 622:

". . . and the master is presumed to know the nature and qualities of the materials he places in the hands of his servants. In other words, he is presumed to have such knowledge of matters pertaining to his business as is possessed by those having special acquaintance with the subjects involved. . . . An employer is presumed to be familiar with the dangers, latent as well as patent, ordinarily accompanying the business in which he is engaged."

and also from Harvey v. Welch, 86 NH 72, 163 A 417:

"The argument that the defendant had no actual knowledge as to the physiological effect of oxalic acid fumes, if well founded in fact, is not effective in law to absolve him from liability. Being under a positive duty to exercise care for the safety of his servant, he was bound to make reasonable inquiry

152

for the purpose of informing himself of the natural consequences of using the material which he furnished. A master 'must take into account the properties of such substances as he employs for the purposes of his business and the operation of familiar physical laws upon these substances.' "

These two cases were also cited with approval in Del Raso v. Elgin, J. & E. Ry. Co., supra.

In Urie v. Thompson, 69 S Ct 1018, the court at page 1029 quoted with approval the following language from Sadowski v. Long Island R. Co., 292 NY at pages 455–456, 55 NE2d 497:

> "Ordinary care must be in proportion to the danger to be avoided and the consequences that might reasonably be anticipated from the neglect. (Cases cited.) It must be commensurate with known dangers. Defendant created the place in which the work was done and supervised the doing of the work by plaintiff and was aware for a period of at least sixteen years of the conditions under which plaintiff was required to work and of the means and methods by which its work was accomplished. It is a matter of common knowledge that it is injurious to the lungs and dangerous to health to work in silica dust, a fact which defendant was bound to know."

 Whether or not plaintiff contracted histoplasmosis from his employment, whether or not defendant knew or should have known of the danger and whether or not the defendant should have warned plaintiff of the danger, are jury questions. A conclusion of the jury in an FELA case, whether it relates to negligence, causation or any other factual matter, cannot be ignored. Tennant v. Peoria & P. U. Ry. Co., supra. The trial court of St. Clair County erred in directing a verdict on behalf of the defendant.

For the foregoing reasons the judgment of the Circuit Court of St. Clair County is reversed and the cause is remanded for a new trial.

Reversed and remanded.

GOLDENHERSH and EBERSPACHER, JJ., concur.