296 So.2d 1 (1974)
Alvin ADAMS, Petitioner,
v.
SEABOARD COAST LINE RAILROAD COMPANY, a Corporation, Respondent.
No. 44036.
Supreme Court of Florida.
May 22, 1974.
Rehearing Denied July 5, 1974.
*2 Edward A. Perse, Horton & Perse, and Beckham & McAliley, Miami, for petitioner.
J. Edwin Gay, Rogers, Towers, Bailey, Jones & Gay, Jacksonville, for respondent.
ADKINS, Chief Justice.
By petition for writ of certiorari, we have for review a decision of the District Court of Appeal, First District (Adams v. Seaboard Coast Line Railroad Company, 277 So.2d 578), which allegedly conflicts with prior decisions of District Courts of Appeal and this Court relating to the evidence required to support proof of negligence and causation under the Federal Employers' Liability Act. We have jurisdiction. Fla. Const., art. V, § 3(b)(3), F.S.A.
The parties will be referred to as they appeared in the lower court: Petitioner, Alvin Adams, was "plaintiff," and respondent, Seaboard Coastline Railroad Company, was "defendant."
Plaintiff was injured in the regular course of his duties as a car inspector for the Railroad in the Albany, Georgia, yards. He brought suit under the Federal Employers' Liability Act (F.E.L.A.). He was 63 years of age at the time of the accident and had been employed by the defendant or its predecessor, the Atlantic Coast Line Railroad, since 1924. Since 1926, he had served as a car inspector at the Albany yard and for several years prior to this incident worked on the "graveyard shift."
Just as other car inspectors, plaintiff made his headquarters during working hours at a shack located between tracks seven and nine. When reporting to work, he usually parked his car south of track nine in an area between tracks ten and eleven. To reach the shack it was necessary for him and the other car inspectors to cross over track nine.
During the daylight shifts the cars on track nine were left uncoupled so employees could easily walk from the parking lot across track nine to work. Track nine was the repair track upon which defective cars were placed until repairs could be accomplished. During the daylight shifts cars were "spotted," i.e., they were uncoupled and separated with space between them so that the cars could be worked on and so that employees on their way from the parking area could merely walk on the ground across track nine.
*3 During the plaintiff's nighttime shift, however, for reasons which are not entirely clear, but which related to the saving of some small time and effort on the part of defendant, the cars on track nine were left coupled with no space between them. It had become customary for plaintiff and those working with him on the graveyard shift to make their way from the parking lot to the shack by climbing and crawling between the coupled cars. The alternative was to walk around the coupled cars which was a distance of approximately seven or eight freight-car lengths to the last car and seven or eight car lengths back.
On the night during which plaintiff was injured, he parked his automobile between tracks ten and eleven, and, as usual, climbed between the coupled cars to the shack. Later, during the early morning hours, plaintiff and an apprentice workman rode in plaintiff's car to a restaurant for a coffee break. In going to his car, plaintiff again climbed between the coupled railroad cars and, on his return, parked his car as usual and began his trip across track nine to the inspector's shack. He was again confronted with a string of cars. While crawling through or between them, he pulled his body slightly too hard and struck his head heavily on a low-hanging brake platform which extended into the inter-car area. Three days later he suffered a severe stroke which resulted in his eventual permanent paralysis.
Plaintiff brought suit under the F.E.L.A., 45 U.S.C. § 51 et seq., and secured a favorable jury verdict. The verdict was set aside by the trial court and, upon appeal, judgment in favor of defendant was affirmed.
The landmark decision under the F.E.L.A. is the case of Rogers v. Missouri Pacific R. Co., 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957). In this decision, the United States Supreme Court set forth the so-called Rogers' Rule which held that the test of a jury case is whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the employee's injury. The cases cited hereinafter by plaintiff, with the exception of Loftin v. Joyner, 60 So.2d 154 (Fla. 1952), are post-Rogers' rule cases which apply the Rogers' test.
In the case sub judice, plaintiff says the affirmance by the District Court of Appeal conflicts with several prior decisions of this Court and the District Courts of Appeal. The decisions of this Court cited for conflict are: Wale v. Barnes, 278 So.2d 601 (Fla. 1973); Foerman v. Seaboard Coastline Railroad Co., 279 So.2d 825 (Fla. 1973); McCalley v. Seaboard Coastline Railroad Co., 265 So.2d 11 (Fla. 1972); Atlantic Coastline Railroad Co. v. Barrett, 101 So.2d 37 (Fla. 1958); Martin v. Tindell, 98 So.2d 473 (Fla. 1957), and Loftin v. Joyner, supra. The decisions of the District Courts of Appeal cited for conflict are: Atlantic Coastline Railroad Co. v. Cameron, 190 So.2d 34 (Fla.App.1st, 1966); McCloskey v. Louisville and Nashville Railroad Co., 122 So.2d 481 (Fla.App. 1st, 1960); Butler v. Gay, 118 So.2d 572 (Fla.App.3d, 1960). We have jurisdiction pursuant to Fla. Const., art. V, § 3(b)(3), F.S.A.
In Nielsen v. City of Sarasota, 117 So.2d 731 (Fla. 1960), this Court clearly stated the principal situations which would justify the invocation of our jurisdiction to review decisions of the District Courts of Appeal because of alleged conflicts. The situations were:
"(1) the announcement of a rule of law which conflicts with a rule previously announced by this Court, or (2) the application of a rule of law to produce a different result in a case which involves substantially the same controlling facts as a prior case disposed of by this Court. Under the first situation the facts are *4 immaterial. It is the announcement of a conflicting rule of law that conveys jurisdiction to us to review the decision of the Court of Appeal. Under the second situation the controlling facts become vital and our jurisdiction may be asserted only where the Court of Appeal has applied a recognized rule of law to reach a conflicting conclusion in a case involving substantially the same controlling facts as were involved in allegedly conflicting prior decisions of this Court." (p. 734)
Depending on the interpretation given the decision of the District Court of Appeal in the case sub judice, we have jurisdiction under either one of the two situations outlined in Nielsen v. City of Sarasota, supra.
If the rule of law announced and applied in the case sub judice by the District Court of Appeal is the rule of law which was followed in Loftin v. Joyner, supra, then we have conflict with the line of post-Rogers' rule cases cited. The Loftin v. Joyner case, supra, is a pre-Rogers' rule case in which the degree of negligence necessary to establish liability on the part of the employer is much higher than that degree of employer negligence, as set forth in the post-Rogers' rule cases in which liability is established where it can be shown that "employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought."
If the District Court of Appeal decision is interpreted as applying the less stringent Rogers' rule and not the rule of law announced in Loftin v. Joyner, supra, which requires a much higher degree of negligence in order to establish employer liability, our conflict jurisdiction would vest under the second situation described in Nielsen v. City of Sarasota, supra, that is, the application of a rule of law to produce a different result in a case which involves substantially the same controlling facts as the prior case disposed of by this Court. The District Court of Appeal in its opinion in the case sub judice carefully set out the facts which led to plaintiff's being injured when he hit his head while climbing between coupled railroad cars to reach his work station. The crucial fact to be remembered is that plaintiff was injured while attempting to reach his work station. In the several cases cited for conflict, the respective opinions carefully set out facts from which a jury could have concluded that the employer was negligent. In its opinion, sub judice, the District Court of Appeal alluded to the fact that the plaintiff in order to arrive at his place of work had to climb between certain coupled freight cars or walk about seven or eight car lengths. He chose to climb between the coupled cars and was injured.
In one of the cases cited for conflict, Atlantic Coastline Railroad Co. v. Cameron, supra, an action was brought under the Federal Employers' Liability Act which the District Court recognized as having the effect of "broaden[ing] the scope of liability of the railroad while at the same time narrowing the requisite proof of negligence to sustain recovery by an employee of the railroad." The facts were that the railroad provided a vertical ladder which afforded little toe-hold, which necessarily required the employee to grasp a wire cable, which broke, in order to climb the ladder and reach his place of work. The District Court of Appeal in holding that there were sufficient facts to support negligence on the part of the railroad under the Federal Employers' Liability Act, stated that the trial court was close to being correct when saying that: "A mere inference of negligence is sufficient to sustain a verdict." In the case sub judice the facts set out in the District Court's opinion amounted to more than a "mere inference of negligence."
We find that the District Court of Appeal, in applying and recognizing the standard of negligence embodied in the Rogers' rule reached a different result in a case which involved substantially the same controlling facts as a prior case, the "prior *5 case" being Atlantic Coastline Railroad Co. v. Cameron, supra, and the "same controlling facts" being the injury to the employee of a railroad while attempting to reach his work station.
Plaintiff had been climbing between cars in a similar fashion for many years without incident or injury. He was aware that each car had a brake platform. He explained the accident by stating that in negotiating the dark and narrow passageway between the cars, he took hold of a brake rod, put his foot on the left lever, and apparently pulled up slightly too hard and struck his head. Plaintiff's claim of railroad negligence was basically predicated upon the failure of defendant to provide employees with a reasonably safe means of going to and from their duty post, which could have been accomplished by the simple expedient of uncoupling or "spotting" the cars on the repair track so that it would not be constantly necessary for employees to crawl through the confined and tunneled area between the coupled cars.
Plaintiff's superior testified that the decision as to whether to climb through cars or walk around a standing train was left to the discretion of the individual employee; that the practice of crawling between the cars on the repair track had been a universal practice for many years and no employee had ever been disciplined for crawling between the cars instead of walking around the train. In other yards operated by the defendant in other localities, defendant had taken steps to obviate the danger presented by coupled cars and employees crawling through them during the course of their duties.
The trial judge held there was no evidence of negligence or caustion under the Federal Employers' Liability Act. The trial judge then set aside a jury verdict in favor of plaintiff, ruled that defendant's motion for directed verdict at the conclusion of plaintiff's case should have been granted, and rendered final judgment in favor of defendant. Upon appeal, this final judgment was affirmed by the District Court of Appeal.
In an F.E.L.A. case, employee negligence does not bar recovery unless it can be said that as a matter of law it constituted the sole cause of the accident. Mere employee knowledge of a dangerous condition created by employer negligence does not preclude recovery when that danger contributes to the injury. Nor does it matter that the employee had escaped injury when confronting the danger in the past. See Terminal R. Assn. of St. Louis v. Fitzjohn, 165 F.2d 473 (8th Cir.1948); Goodwin v. Wabash R. Co., 33 Ill. App.2d 349, 179 N.E.2d 430 (1961); Delevie v. Reading Co., 176 F.2d 496 (3rd Cir.1949); Louisville & N.R. Co. v. Cooke, 267 Ala. 424, 103 So.2d 791 (Ala. 1958); see also, Annot. 98 A.L.R.2d 653.
In Butler v. Gay, 118 So.2d 572 (Fla. App.3d, 1960), cert. dis., 122 So.2d 189 (Fla. 1960), the plaintiff while working as head brakeman for the defendant railroad, suffered personal injuries. Prior to his injury, the plaintiff had spotted a car at a siding and gave the engineer a signal to go ahead. There was located adjacent to the track, and between the engineer and the plaintiff, a concrete wall which had been originally constructed to prevent rock and sand from drifting onto the track. However, at the time of the accident it was not being so used. There was insufficient clearance for an average person to ride between the wall and track while hanging onto the side of a railway car. A sign informing employees of this fact had been placed on the north end of the wall. The plaintiff knew of the existence of the wall and had performed the same general work in that area prior to his injury. After giving the engineer the signal to go ahead, plaintiff looked away from the direction of the engineer and wall to receive a signal from another switchman. While thus engaged, the train moved and plaintiff's hip struck the south end of the wall. In rejecting the railroad's contention that it was *6 entitled to judgment as a matter of law, the District Court of Appeal, Third District, held that under the rule enunciated in Rogers v. Missouri Pacific R. Co., 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957), "We must conclude that the evidence was sufficient to support the jury finding." The Court then quoted with approval the following passage from Rogers:
"Under this statute the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought. It does not matter that, from the evidence, the jury may also with reason, on grounds of probability, attribute the result to other causes, including the employee's contributory negligence. Judicial appraisal of the proofs to determine whether a jury question is presented is narrowly limited to the single inquiry whether, with reason, the conclusion may be drawn that negligence of the employer played any part at all in the injury or death. Judges are to fix their sights primarily to make that appraisal and, if the test is met, are bound to find that a case for the jury is made out whether or not the evidence allows the jury a choice of other probabilities. The statute expressly imposes liability upon the employer to pay damages for injury or death due `in whole or in part' to its negligence. (352 U.S. at 506, 77 S.Ct. at 448)
Martin v. Tindell, 98 So.2d 473 (Fla. 1957), involved a traveling mechanic for the railroad who was charged with making light repairs while trains were underway. On several occasions prior to the day plaintiff was injured, it had been reported to the railroad that water was leaking from an air-conditioning unit in the tavern car. Although the railroad worked on the car on two occasions, the cause of the leak was not discovered. On the day of the accident the trainmaster was advised by the bartender that the air-conditioning unit was again leaking and that the car should be "cut out," but, despite this warning, the car was sent out on the train when it left Miami going north. While the train was in transit, plaintiff attempted to repair the unit which was spilling water on the floor of the tavern car. When he could not stop the leak, he notified the conductor and advised that the car be taken out of the train because of the dangerous condition created by the water on the floor. Immediately thereafter he walked on the wet floor and slipped and fell, sustaining a back injury. Trial of the cause culminated in a jury verdict in favor of the plaintiff. In rejecting the railroad's contention on appeal that it was entitled to a directed verdict, this Court stated:
"Defendant next contends that the plaintiff's negligence in stepping on the wet floor which he knew to be, and which he had warned the conductor to be, dangerous was the sole proximate cause of his injury, and that, therefore, plaintiff cannot recover, and a directed verdict should have been given in defendant's favor. Under this contention, defendant also argues that the plaintiff cannot recover because of the unsafe condition since it was his duty to repair and correct it.
"The facts of this case clearly show that the plaintiff was negligent. Yet we cannot say that the absence of negligence on the part of the defendant was so clear as to justify the trial court directing a verdict for the defendant.
......
"The Federal Employers' Liability Act, 45 U.S.C.A. § 51, et seq., has stricken the defenses of contributory negligence and assumption of risk. Comparative negligence has been substituted therefor.... The negligence of the plaintiff therefore does not prevent his recovery if the defendant was also *7 guilty of negligence." 98 So.2d 473, pp. 475-476.
In the case sub judice, there is no doubt that plaintiff was injured while in the course of his regular duties as a car inspector for the defendant railroad. The defendant, with full knowledge of the situation, created and maintained its yard in such a fashion that car inspectors in going to and from their duty station by the shortest route had to cross between the cars located on the repair track. Although these cars were uncoupled and separated during the day, for defendant's convenience, the cars were left coupled at night leaving the inspectors the option of crawling between the cars or making a long and even potentially dangerous trip around the end of the string of cars. The yard master at another yard testified that the decision as to whether to climb through cars or walk around them was left to the discretion of the individuals and, despite the universal practice of crawling between the cars on the repair track, no employee had ever been disciplined for climbing between the cars instead of walking around the train. The defendant failed to take any steps to eliminate this source of danger to the plaintiff, even though it had done so elsewhere.
After appropriate instructions, the jury returned a verdict in favor of the plaintiff and the trial court admitted error in setting aside this verdict. For the reason stated, the decision of the District Court of Appeal is quashed and the cause is remanded with instructions to further remand said cause to the trial court for the purpose of reinstating the verdict of the jury.
It is so ordered.
ERVIN, BOYD and CARLTON (Retired), JJ., concur.
ROBERTS, J., dissents.