JAMES GONET, Plaintiff-Appellant, v. CHICAGO AND NORTH WEST-
ERN TRANSPORTATION COMPANY, Defendant-Appellee.

First District (6th Division)   No. 1—89—1748

Opinion filed March 23, 1990.

Harold Liebenson, of Chicago, and DeParcq, Hunegs, Stone, Koenig & Reid, P.A., of Minneapolis, Minnesota (William Kvas, of counsel), for appellant.

Richard A. Haydu, of Chicago (James P. Daley and George H. Brant, of counsel), for appellee.

PRESIDING JUSTICE LaPORTA delivered the opinion of the court:

Plaintiff brought suit against defendant under the Federal Employers' Liability Act (45 U.S.C. §§ 51 through 60 (1982)), alleging that, due to defendant's negligence, plaintiff had suffered severe and

irreversible hearing loss. After a bench trial, judgment was entered for the defendant, and plaintiff appeals.

On appeal, the plaintiff raises these issues: (1) whether the judgment of the court was contrary to the manifest weight of the evidence at trial, and (2) whether the judgment of the court was based on evidence prohibited under the Federal Employers' Liability Act.

At trial the court heard the testimony of the plaintiff, his wife, and Dr. Byron Eisenstein, M.D., all of whom were called by the plaintiff as his witnesses, and of Dr. Thomas Cook, M.D., called by defendant as its sole witness.

The Federal Employers' Liability Act (FELA) provides that every common carrier railroad "shall be liable in damages to any person suffering injury while he is employed by such carrier *** for such injury or death resulting in whole or in part from the negligence of *** such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, · track, roadbed, works, boats, wharves, or other equipment." (45 U.S.C. § 51 (1982).) The statute further provides that the employee's contributory negligence shall not bar his recovery, but damages shall be diminished in proportion to the employee's negligence (45 U.S.C. § 53 (1982)), and where the injury or death resulted from any negligence, however slight on the part of the railroad in violation of the statute, the employee shall not be held to have assumed the risks of his employment to defeat his claim for damages under this statute (45 U.S.C. § 54 (1982)).

■ Basic to the success of plaintiff's claim is proof of some negligence however slight on the part of defendant railroad and a resulting injury to plaintiff. The evidence must establish not only defendant's negligence but also a causal connection to plaintiff's injury. The judicial appraisal of proofs is narrowly limited to the single inquiry whether with reason the conclusion may be drawn that the negligence of the employer played any part at all in the injury. *Rogers v. Missouri Pacific R.R. Co.* (1957), 352 U.S. 500, 506, 1 L. Ed. 2d 493, 499, 77 S. Ct. 443, 448.

■ Actionable negligence is the breach of a legal duty through neglect or carelessness which results in injury to another. It is the failure of duty or omission of something which ought to have been done. Black's Law Dictionary 28 (5th ed. 1979).

The complaint in this case alleges defendant was negligent in failing to provide the plaintiff with a safe place to work, in requiring plaintiff to work in an unsafe place where noise levels were unsafe and dangerous, in failing to provide safe and proper tools and equip-

ment to do the work, in failing to provide adequate and proper hearing-protection devices, in failing to warn plaintiff of his exposure to unsafe noise levels, in failing to adopt safe customary practices to do the work, and in assigning plaintiff to work in a place where he was exposed unnecessarily to excessive and high noise levels without protection.

On appeal, plaintiff frames the question before this court in the following manner: "Did the trial court err in determining that the defendant was not negligent for failing to provide hearing protection, even when it was asked, to an employee it knew had a hearing problem and who worked in an environment which the uncontroverted evidence showed was dangerously noisy?" Plaintiff also argues that aggravation of a preexisting condition is compensable under the FELA.

In announcing his decision, the trial judge stated he was troubled by the quality of the evidence produced. He stated that in total, from all reasonable inferences from the evidence offered, he found no proof of negligence attributable to the railroad and stated he could not guess at the negligence suggested on the part of the defendant. He considered the testimony of plaintiff's treating physician and concluded from his testimony that during his lifetime plaintiff was exposed to noise. The judge commented on plaintiff's exposure to noise while in military service but stated there was no evidence to establish to what extent plaintiff's hearing may have been impaired while in service. He stated that he was entitled to consider and make reasonable inferences from the testimony of the plaintiff and his wife, who had an interest in the outcome of the trial. The trial judge, in considering the supposition offered by plaintiff that his impairment is due to negligence of the railroad, commented that he was troubled by plaintiff's failure as a union official to complain about the noise level and commented that plaintiff was presently employed by the defendant company against whom this claim was filed. The trial judge found that plaintiff had failed to sustain his burden of proof within the requirements of the law, and he entered judgment for the defendant.

The uncontroverted evidence established that plaintiff commenced work for defendant railroad in January 1971 working as an assistant carman assigned to its shop on California Avenue in Chicago, Illinois. His duties required him to work on and repair railroad cars, and in doing so, he used pneumatic air jacks, air rivets, air grinders, air chisels, air nibblers, welding equipment and other power equipment. Plaintiff testified that the noise level was intense and constant. On cross-examination, however, he testified that the noise in the shop was not constant and that since approximately 1979 he has worked in

the open yard, where the noise level was greatly reduced.

Immediately prior to his employment with the defendant railroad, plaintiff had worked for another company where his work required the use of hand tools. His military service was in the Marine Corps from September 1961 until January 1966. While in military service, he fired M—1 rifles and a number of other military weapons and was involved in demolition work. Plaintiff testified he set explosives approximately three times. He also testified that he has hunted since he was 16 years old, going out two or three times each season, and that he was exposed to loud noises from rifle fire when hunting.

Prior to plaintiff's employment and as part of its established company practice, the defendant railroad required plaintiff to undergo a physical examination which included an audiogram. The examination and hearing test were performed on January 14, 1971.

Following his preemployment physical examination, plaintiff testified he was not informed of the results of his audiogram, and although the test revealed some high frequency hearing loss, no limitations were placed on his employment. He testified that when he began his employment with the defendant he experienced no difficulty with his hearing. The evidence also established that plaintiff had worked for the defendant continuously since 1971 doing the same work and at the time of trial was still an employee of defendant.

Plaintiff testified he was given another physical examination and audiogram test in 1977, which was required by his employer when he returned to work after a gall bladder operation. He was permitted to return to his assigned work without restriction.

Plaintiff and his wife both testified that in 1983 they noticed he had trouble with his hearing in a conversational setting. He was examined by Dr. Byron Eisenstein, who was a hearing specialist and who recommended that he see an audiologist. He testified he was examined by such a specialist, Mary Kay Chism, who did not testify at trial. Following this examination plaintiff testified that he was fitted for hearing aids and has used them since 1983. He was also fitted for hearing-protection devices, which he then used while on the job. The evidence included the audiogram report for testing done on plaintiff on November 24, 1987, after four years of hearing aids use.

Plaintiff's testimony disclosed that he and his co-workers in the shop used heavy machinery and power tools which caused noise so loud that they could not hear one another speak. On direct examination the plaintiff testified he complained of the noise in 1971 and asked for hearing protection, but his foreman told him that he had no hearing-protection devices to give him. He was told to go back to

work. He testified that he again complained about the noise to his foreman in 1980 with the same response. However, on cross-examination plaintiff testified that these complaints were made in 1975 and 1983, respectively, and again on redirect he testified that he complained once, it did no good, and that he did not bother to complain after that.

Plaintiff began using hearing protection at work in 1983, wearing ear plugs given him by the audiologist. He testified that the defendant did not provide hearing protection to its employees nor did it encourage its employees to use such protection, although they have been required to use helmet and safety goggles since 1979 or 1980. Plaintiff testified that although hearing protection for employees later was made available, he did not remember when. He did not indicate whether he now uses hearing-protection devices provided by his employer. He further testified that he is the only employee presently wearing any hearing protection on the job.

Dr. Eisenstein testified that he was the treating physician who first saw plaintiff on September 29, 1983. He stated that he is a board-certified otolaryngologist. The doctor testified that two audiogram tests were administered on that date to detect the nature and extent of plaintiff's hearing loss. He described an air test, which detects any obstruction in the external ear canal or in the middle ear which obstructs sound waves from reaching the inner ear and which measures conductive loss. He described the bone test, which measures the level at which the nerve in the inner ear is functioning, and testified that this test must be done to detect neurosensory hearing loss in the inner ear.

He further testified that the audiograms done on plaintiff at the time of his first visit in 1983 revealed that he had a moderate to severe bilateral sensory neural hearing loss in both ears and that this was an impairment of the inner ear which diminished his ability to hear high frequency sounds. He stated that this area of the inner ear is particularly vulnerable to damage caused by excessive noise. The doctor testified that from the history given him by plaintiff, that he worked in an area of excessive noise, and from the audiogram readings, he concluded that the impairment "was probably noise induced."

On cross-examination the doctor testified that plaintiff had not told him of his exposure to noises from pistols, rifles, rocket launchers and other weapons and from demolition and explosive devices while in military service nor had he mentioned his lifelong hobby of hunting, where he frequently was exposed to the sound of rifle fire. When asked if each of these types of noise could have affected plaintiff's in-

ner ear, he responded "Yes".

Doctor Eisenstein testified that from his review of the 1971 and 1977 audiograms done by the railroad physicians, he found the test results showed that plaintiff suffered from a high frequency loss as of the dates those tests were made and that high frequency loss is caused by noise exposure. No questions were asked of Dr. Eisenstein to determine whether the 1971 and 1977 audiograms showed any abnormalities in plaintiff's hearing in the speech frequencies or if his hearing was normal at those levels and at those times. Plaintiff's counsel did not ask the doctor to describe possible causes of hearing loss in the speech frequencies. His testimony with regard to the effect of noise exposure on hearing was that hearing loss in the high frequency range was caused by noise.

According to Dr. Eisenstein, the plaintiff told him the hearing loss was very gradual and that in 1983 plaintiff's wife noticed for the first time that plaintiff did not seem to hear conversations. Plaintiff was fitted in 1983 for hearing protection devices for use at work and for hearing aids. Dr. Eisenstein reviewed an audiogram taken in 1987 and testified that no further deterioration of plaintiff's ability to hear in the speech frequencies from the level measured in 1983 had occurred.

Defendant's witness, Dr. Cook, testified that he began work for the railroad in 1976 as its medical director. He testified from the medical records of the plaintiff maintained by defendant railroad, specifically from the results of audiograms taken in 1971, as a condition of hiring plaintiff as an employee, and in 1977 as a condition of his return to work following gall bladder surgery. He testified he is not a specialist in diseases of the ear nor is he an otolaryngologist, but that he has a basic working knowledge of the interpretation of audiogram test results and of the air conduction, the bone conduction and the word discrimination tests done by an audiologist.

Dr. Cook was asked to compare the 1971 audiogram administered by the railroad with the 1987 audiogram performed by Dr. Eisenstein describing the hertz scores as to speech frequencies. He testified that the hertz score measures the decibel levels required for the patient to hear sounds at various speech frequencies and that a normal range at the hertz 1,000 level measures about 25. He testified that the 1971 audiogram reflected that plaintiff's hearing was within the normal range through the speech frequencies but that it dropped off at the high frequency levels. From the 1987 audiogram Dr. Cook testified that the test results showed that speech frequencies at that date had to be amplified five times for the left ear and seven times for the right ear for the plaintiff to hear conversations. Dr. Cook was asked

questions only about the test results for the speech frequencies, but no questions were asked of him to compare the test results for the 1971 and 1987 audiograms for high frequency loss. Nor was he asked whether the later report showed any further deterioration at those high frequency levels which plaintiff's medical expert testified were particularly vulnerable to damage from excessive noise.

We find it particularly significant that plaintiff's medical expert, who was a board-certified otolaryngologist and the treating physician, testified that his review of the railroad's 1971 and 1977 audiograms disclosed that in 1971 plaintiff had measurable high frequency loss and that exposure to loud noises was the cause of hearing loss at the high frequency level. However, it is also significant that although Dr. Eisenstein tested and determined that in 1983 plaintiff suffered hearing loss in the speech frequencies and prescribed hearing aids to amplify sound for the hearing impairment at speech frequencies, this is not the type of hearing loss attributed to noise. The doctor was not asked nor did he identify the cause of hearing loss in the speech frequencies. His testimony limited hearing loss caused by noise exposure to high frequency sounds.

Dr. Cook, who acknowledged that he was not a hearing expert, testified that a comparison between the 1971 and 1987 audiograms disclosed a deterioration in hearing at the speech frequency level from 1971 to 1987. He too was not asked nor did he identify the cause of deterioration at the speech frequencies. No one identified excessive noise as the cause of hearing loss at the speech frequencies nor was either physician asked to compare the high frequencies results to determine whether this hearing loss, caused by exposure to noise, had changed from 1971 to 1987. Because the witnesses were not asked to compare the high frequencies scores on the audiograms taken 16 years apart, we infer that a comparison between them would disclose no change in the level of high frequency impairment. We also note that plaintiff did not ask either physician to compare the 1977 audiogram with the tests taken in 1971, 1983 or 1987.

We next consider what duty the defendant owed to its employee, the plaintiff. Plaintiff alleged a duty to provide a safe place to work where noise levels were not unnecessarily excessive and high. He alleged the railroad had a duty to warn plaintiff of his exposure to unsafe noise levels and alleged a failure to provide safe tools and equipment as well as failure to provide hearing protection. Plaintiff further alleged failure to adopt safe, customary work practices. While these were the allegations in the complaint, proofs were offered at trial to support the allegations of high and dangerous levels of noise in the

workplace, failure to warn plaintiff of the possibility of loss of hearing from exposure to this noise and failure to provide hearing protection devices.

■ An employer will be liable for injuries resulting from conditions under the employer's control which are not conditions a reasonable person would permit. *Wilkerson v. McCarthy* (1949), 336 U.S. 53; 61, 93 L. Ed. 497, 504, 69 S. Ct. 413, 417; *Tiller v. Atlantic Coast Line R.R. Co.* (1943), 318 U.S. 54, 67, 87 L. Ed. 610, 617, 63 S. Ct. 444, 451, 143 A.L.R. 967, 974; see also *Del Raso v. Elgin, Joliet & Eastern Ry. Co.* (1967), 84 Ill. App. 2d 344, 363, 228 N.E.2d 470, 479.

■ Under the FELA a carrier is liable to its employee for his injury by reason of any defect or insufficiency due to employer's negligence, but where the carrier is not guilty of negligence, it is not chargeable with the failure to provide a safe place to work. (*Payne v. Baltimore & Ohio R. R. Co.* (1953), 351 Ill. App. 186, 189, 114 N.E.2d 323, 325.) The FELA does not make the railroad an absolute insurer against injuries suffered by its employees; the Act imposes liability only for negligent injuries. *Amerpohl v. Illinois Central Railroad Co.* (1958), 17 Ill. App. 2d 416, 150 N.E.2d 212 (abstract of opinion).

Under the FELA a railroad is not subject to absolute liability to its employee; liability under the statute must arise from employer's negligence based upon substantial evidence in the record. *Kloetzer v. Louisville & Nashville R.R. Co.* (1950), 341 Ill. App. 478, 485, 95 N.E.2d 502, 505; *Amerpohl*, 17 Ill. App. 2d at 416, 150 N.E.2d at 212 (abstract of opinion); *Wilkerson*, 36 U.S. at 61, 93 L. Ed. at 504, 69 S. Ct. at 417.

The only testimony that the shop had high noise levels was from the plaintiff, who described air-powered and pneumatic equipment used for the work he did but that the equipment and power tools were not used eight hours a day every day, and he stated that because of the noise in the shop, he would have to tap a co-worker on the back to get his attention in order to communicate with him.

In answer to his attorney's question on direct examination, "Have you ever seen any dosimeters or any noise level measuring devices present in the shop?" he answered "No." It is reasonable to conclude that plaintiff wanted the court to draw an inference from this question that the defendant had a duty to measure the shop sounds. No further proofs were offered to support any inferred duty on the railroad to record or measure noise levels in the shop. We note that neither did plaintiff offer such test results in support of his conclusory statement that the shop was noisy. The trial court could conclude therefrom that plaintiff himself did not make such a test to establish

what the actual noise levels were by any scientific measure. The court could also conclude that plaintiff further failed to prove that the defendant was required by any statute or otherwise to test noise levels. No witness with personal knowledge of noise intensity was called to testify in support of plaintiff's allegations of noise. The trial court could conclude that the evidence did not establish that the noise was at a dangerous level.

Plaintiff offered no evidence to support a requirement, statutory or otherwise, that defendant provide hearing-protection devices for employees who work under conditions similar to the shop conditions described here. The plaintiff did not prove nor did the medical testimony establish that hearing protection devices would have prevented this plaintiff's hearing impairment. The evidence did not prove that plaintiff's hearing loss was caused by the noise of defendant's shop. The evidence did establish that plaintiff's work since 1979 or 1980 has been in the yard and outside the shop, where noise levels are dissipated and substantially less than inside the shop, and that no hearing impairment was detected until 1983, some three or more years later when he no longer was exposed to allegedly dangerous levels of noise.

Plaintiff argues that the record is devoid of any other explanation for the decrease in plaintiff's hearing during his employment by the railroad other than the noise at defendant's shops. We submit that the fact that the record offers no other explanation is not the legal equivalent of proving causation. The evidence does not support any suggestion that defendant had a duty to warn plaintiff that exposure to the shop noise could result in hearing impairment.

■ Plaintiff argues that the trial court relied on evidence prohibited by the statute in reaching its conclusion in favor of defendant. Specifically, plaintiff refers to the comments of the trial judge which refer to the testimony of plaintiff and his wife, who "have an interest in the case," and concludes "the court certainly has a right to consider and make whatever reasonable inferences from the evidence as the fact finder in this cause." The Illinois Code of Civil Procedure provides in pertinent part:

> "No person shall be disqualified as a witness in any action or proceeding *** by reason of his or her interest in the event thereof, as a party or otherwise, *** but such interest *** may be shown for the purpose of affecting the credibility of such witness ***." (Ill. Rev. Stat. 1985, ch. 110, par. 8—101.)

We find no error by the trial court in considering the interest of the plaintiff and his wife in the outcome of the trial.

■ Plaintiff contends that the court drew an inference which is

prohibited by the FELA when he stated, "and then you have the situation where Mr. Gonet is still presently employed by the company that he complains about." He argues that this statement reflects that the trial court believed plaintiff bears some responsibility for his impairment because he has assumed the risks of which he now complains. While the statute specifically provides that assumption of risk is no defense (*Tiller*, 318 U.S. at 64, 87 L. Ed. at 616, 63 S. Ct. at 449-50; 31 U.S.C. § 54 (1982)), this comment about the plaintiff's continued employment with defendant railroad followed a recital by the trial court of all of the evidence presented at the trial. It then stated that in considering all of the evidence, it was making "reasonable inferences as to whether the plaintiff has proven his case in accord and with the requirements of the law." We reject plaintiff's argument because we do not find that this comment by the court raises to the level of a finding of assumption of risk, which would be contrary to the statute.

■■ ■ The trier of fact has the duty to weigh contradictory evidence, judge witness credibility, and draw ultimate conclusions from the facts. (*Lee v. Grand Trunk Western R.R. Co.* (1986), 143 Ill. App. 3d 500, 512, 492 N.E.2d 1364, 1374.) It is the trial court's prerogative to draw reasonable inferences and ultimate conclusions from the evidence (*Lee*, 143 Ill. App. 3d at 512, 492 N.E.2d at 1374), and its judgment will not be disturbed because another trier of fact could have found differently or found reasonable other conclusions. *Lee*, 143 Ill. App. 3d at 512, 492 N.E.2d at 1374.

Even where plaintiff's testimony in a bench trial was uncontradicted, the trial court was not required to give credence to or accept that testimony as establishing any fact in issue. (*Davies v. Arthur Murray, Inc.* (1970), 124 Ill. App. 2d 141, 155, 260 N.E.2d 240, 247.) The court will not upset determinations of facts, credibility of witnesses or weight to be given testimony unless those determinations are manifestly against the weight of the evidence. *Davies*, 124 Ill. App. 2d at 155, 260 N.E.2d at 247.

The trial judge clearly concluded that the plaintiff's evidence was insufficient to sustain a finding of negligence by the defendant or a causal link between any act of defendant and plaintiff's hearing impairment. He expressed concern as to the quality of the evidence, found that during his lifetime plaintiff has been exposed to noise, including his military service and his hunting trips, but stated that the FELA did not impose on the defendant a total duty to the plaintiff and stated that from the evidence he could find no negligence attributable to the defendant.

In considering whether the railroad should have known of the possibility that its shop noise could cause hearing impairment, we note that no evidence was offered to show that any other shop employee was affected by the noise or complained of it. No evidence was offered to establish that the noise levels were greater than customary noise levels for shop work in the industry or that they were a danger to people working there. No proof was offered that the use of hearing devices would have prevented plaintiff's impairment, which was clearly not established to have resulted from noise.

■■ ■ In FELA cases the scope of appellate review is limited to a determination of whether there is an evidentiary basis for the conclusion reached, and when that evidentiary basis becomes apparent, the appellate court may not weigh the conflicting evidence again or judge witness credibility to reach an opposite conclusion from that of the trial court. (*Bowman v. Illinois Central R.R. Co.* (1957), 11 Ill. 2d 186, 200-01, 142 N.E.2d 104, 114; *Lavender v. Kurn* (1946), 327 U.S. 645, 652-53, 90 L. Ed. 916, 922, 66 S. Ct. 740, 744.) A reversible error exists where there is a complete absence of probative facts to support the conclusion reached by the trier of fact. (*Bowman,* 11 Ill. 2d at 201, 142 N.E.2d at 114; *Lavender,* 327 U.S. at 653, 90 L. Ed. at 923, 66 S. Ct. at 744.) The appellate court's function is exhausted when that evidentiary basis becomes apparent. *Bowman,* 11 Ill. 2d at 201, 142 N.E.2d at 114.

The standard to be applied by the reviewing court in FELA cases requires a determination that there was a sufficient evidentiary basis for the trial court's verdict or judgment and that reversible error does not occur unless there is a complete absence of probative facts to support the conclusion reached by the trial court. *Woodruff v. Pennsylvania R.R. Co.* (1964), 52 Ill. App. 2d 341, 354, 202 N.E.2d 113, 120; *Goodwin v. Wabash R.R. Co.* (1961), 33 Ill. App. 2d 349, 350, 179 N.E.2d 430-31.

All cases cited by plaintiff involve claims for injuries which result from accidents or from circumstances where the injury-causing event is a single occurrence as the result of which the employee is injured. None of these cases concerns injuries resulting from exposure to dangerous work conditions over a period of time, as is alleged here. For this reason we find them factually distinguishable.

Few of the reported FELA cases have addressed the question of employee injuries due to sustained exposure to dangerous workplace conditions. In *Mitchell v. Missouri Pacific R.R. Co.* (1968), 104 Ill. App. 2d 142, 153, 244 N.E.2d 406, 409, the reviewing court held that the plaintiff was required to prove that defendant knew or should

have known that plaintiff was exposed to the dangers of histoplasmosis from inhaling dust created by plaintiff's duties of scraping bird droppings from beams and braces on employer's railroad bridges. The trial court directed a verdict in favor of defendant at the close of plaintiff's case. On appeal, the reviewing court reversed the trial court and held that it is for the jury or the trier of fact to consider the evidence and to determine questions of the employer's knowledge, duty to warn, negligence and causation; the conclusions of the jury in a FELA case cannot be ignored. *Mitchell,* 104 Ill. App. 2d at 153, 244 N.E.2d at 412.

In *McCorkel v. Pennsylvania R.R. Co.* (1961), 32 Ill. App. 2d 193, 177 N.E.2d 369, the plaintiff, a locomotive engineer, sought to recover for severe hearing loss which he alleged was caused by negligent operation of horns on defendant's locomotives. The record disclosed that it was undisputed plaintiff had a hearing loss. On two separate occasions while he was in the cab of his locomotive the operators of trains on immediately adjacent tracks to his blew sustained blasts from horns or whistles as warnings in the manner which was routine and customary. The jury found no negligence by the railroad. On appeal the reviewing court found there was an evidentiary basis in the record to support the jury's verdict and in considering the record in light of plaintiff's contentions concluded that no reversible error was presented.

We reach the same conclusion here. The trial court examined the evidence, assessed the credibility of the witnesses, made findings of fact and concluded that the evidence failed to establish defendant's negligence. We find no reversible error and affirm the judgment of the trial court.

Judgment affirmed.

EGAN and RAKOWSKI, JJ., concur.