**William G. Davies, Plaintiff-Appellant, v. Arthur Murray, Inc., et al., Defendants-Appellees.**

**Gen. No. 53,856.**

First District, First Division.
April 27, 1970.
Rehearing denied June 11, 1970.

Posanski, Johannsen, Krohn & Jacobs, of Chicago, for appellant.

Kenart M. Rahn, of Chicago, for appellee.

MR. JUSTICE ADESKO delivered the opinion of the court.

The plaintiff instituted this action to recover money paid on contracts for unused hours of dancing instruction which were allegedly unusable because of plaintiff's physical incapacity. The suit sought cancellation of the contracts and a return of the money paid. Plaintiff's action

was premised upon executory contract law and the fact that the contracts were void as against public policy having been proscribed by a Federal Trade Commission Order. Trial was held without a jury and the court entered judgment for the defendant. Plaintiff seeks to reverse this judgment upon the same grounds that were urged before the trial court.

Suit was commenced against two corporate entities and Albert R. Vente, a licensee of Arthur Murray, Inc., a Delaware Corporation. At the trial the corporate defendants were either dismissed or had not been served with process and the case proceeded only against defendant Vente who had operated an Arthur Murray Dance Studio as a licensee of Arthur Murray, Inc., located in Chicago during the years 1953 to 1966.

The plaintiff, William G. Davies, subscribed for lessons commencing in 1958 and continued to take lessons until September of 1964. He discontinued dancing instruction because of his alleged illness and surgery. Plaintiff was 62 years of age when he commenced taking lessons and had retired. Prior to his surgery, the plaintiff spoke with the defendant on two occasions and requested a refund for prepaid but unused lessons. Plaintiff stated that due to his physical incapacity and on his doctor's advice he would be unable to complete the lessons contracted for. According to plaintiff's testimony, the defendant allegedly stated his willingness to comply with the request if it were economically possible in the future. After plaintiff's surgery, a written demand for a refund was made. The present action was commenced when no refund was received.

The complaint alleged that Albert R. Vente, as a franchise holder from Arthur Murray, Inc., had entered into certain contracts with plaintiff. These contracts were entered into while plaintiff was taking lessons under prior contracts. Copies of several contracts for dance

144

instruction were attached to the complaint, which were dated beginning on September 16, 1960, with the last contract dated August 30, 1963. The plaintiff alleged that these contracts were in direct violation of a Federal Trade Commission Order, dated July 27, 1960, of which the following was set forth in the complaint:

"Contracting with a pupil or prospective pupil for a specific course of dancing instruction and thereafter, prior to completion of the given course, subjecting such pupil or prospective pupil to sales effort toward the purchase of additional lessons, unless (a) any contract for additional lessons is subject to cancellation by such pupil or prospective pupil, with or without cause, at any time up to and including one week after completion of the units of dancing instruction previously contracted for, without cost or obligation, except that a charge may be made for not in excess of two additional lessons furnished during such week and (b) all of such units previously contracted for shall be used or completed prior to the commencement of additional lessons." 57 FTC 306, 314–15 (1960).

Plaintiff alleged that defendant willfully and maliciously induced him to contract for future lessons while prior contracts had not been completed, all subsequent to the effective date of that order. Finally, the complaint alleged that plaintiff's illness precluded him from completing these lessons and that defendant Vente had refused plaintiff's demand for a refund.

The defendant's answer denied the binding effect of the FTC order as to him on the grounds that the defendant was not a party to that proceeding and had refused to comply with several requests of his licensor to agree to the terms of the order. A copy of a letter from Arthur Murray, Inc. to defendant was attached to the

answer. The letter was a notice of the issuance of the FTC order and a request that the licensee assent to be bound by the order which would thereby amend the franchise agreement. Defendant denied the plaintiff's allegations of inducement and stated that plaintiff voluntarily entered into the contracts in question. Defendant denied knowledge of plaintiff's illness and denied that he had agreed to refund the monies paid on said contracts. The defendant recalled having a conversation with plaintiff regarding a refund. Defendant said that he only expressed a willingness to comply with the requested refund if he could afford to do so in the future. The defendant also denied that any of his salesmen induced plaintiff into said contracts by a method of "relay selling" as alleged in the complaint. It was established that this type of salesmanship involved having another salesman attempt a sale if the first salesman had failed. Defendant stated that the plaintiff had made the request for additional lessons after talking with his instructor.

Evidence regarding plaintiff's physical incapacity was introduced through plaintiff's testimony. On cross-examination, the plaintiff admitted that prior to beginning his lessons in 1958, he had a problem with high blood pressure. It was also disclosed that sometime in 1959, plaintiff had been hospitalized for a hernia condition. Plaintiff acknowledged that sometime in 1960 or 1961 he had been informed of the FTC order by some fellow students. Despite this knowledge, he purchased the lessons which are the disputed contracts involved. Plaintiff stated that he was satisfied with his lessons and only discontinued them due to his ill health.

On these facts and evidence the court found for the defendant. In rendering its opinion the trial judge stated:

"After considering the evidence in this case, having read the brief of the parties and done some research

146

on my own, I have come to a certain conclusion, one, that the defendant in this case was not bound by the FTC order against Murray, Inc., and among reasons for this conclusion is the fact that the FTC order was a consent order, and did not purport to find the respondent had violated any law."

Furthermore, the trial court declared that there was no violation of public policy, based on either the FTC order or the subsequent legislation enacted in this state. (Ill Rev Stats 1965, c 29, §§ 51–52.)

The plaintiff's first argument deals with the right to rescind and recover the money paid on these contracts. His briefs and argument rest on two contentions. First, that the provisions of the FTC order were binding upon the defendant. Therefore, according to the pertinent language set forth above, the plaintiff was entitled to rescind the contracts for unused lessons. The order itself is a consent decree representing an agreement of the parties and orders that the following parties were to cease and desist from certain business practices:

> "That respondent Arthur Murray, Inc., a corporation, and its officers, and respondents . . . individually and as officers of the corporation, and respondent's agents, representatives and employees, directly or through any corporate or other device, or through any licensee. . . ." 57 FTC 306, 313 (1960).

Defendant did not deny the existence of the FTC order but maintains that it was not applicable to him. Defendant contends that the consent nature of the order cannot be interpreted as an admission of wrongdoing. Defendant relies upon rule 1.55 of the Federal Trade Commission Rules of Practice, which was in effect in 1960 and he emphasizes the following language:

"Effect of Stipulation. . . . The agreement does not constitute an admission by the parties that they have engaged in any method, act or practice violative of law, but it shall, if relevant to the issues, be admissible as evidence of the prior use of the acts or practices set forth therein in any later formal proceeding." 16 CFR 1.55 (1960).

Defendant further asserts he was not served with notice of the FTC proceeding and that he was not bound by this order because the license agreement admitted into evidence shows that defendant was a sole proprietor of his studio and was not controlled by Arthur Murray, Inc. Defendant refused to agree to be bound by this order despite a request made by Arthur Murray, Inc. and asserts that such a request illustrates that the licensee's consent was a condition precedent to the binding effect of the FTC order. Finally, defendant argues that even if the FTC order was violated, the consent decree was not automatically incorporated into the contracts in question. Thus, defendant concludes that the only remedy for violating the FTC order is the prescribed civil penalty under Title 15 of the United States Code (15 USCA § 41 et seq.) and plaintiff cannot rely upon the violation of an FTC order as grounds for cancellation of these contracts.

These contentions have necessitated inquiry into the purposes and the legal principles of the Federal Trade Commission. This administrative body was created to enforce legislation that was intended to regulate unfair methods, unfair competition, and business practices involving interstate commerce. Regulation did not encompass intrastate commerce, even though that business might affect interstate business activity. Federal Trade Commission v. Bunte Brothers, Inc., 312 US 349 (1941). The commission has been described as a nonpartisan body charged with enforcing the law and its duties have

been characterized as quasi-legislative and quasi-judicial in nature. Humphrey's Executor v. United States, 295 US 602 (1935).

The commission is empowered to institute proceedings when such "would be to the interest of the public." 15 USCA § 45 (1963). This has been considered the judicial function of the commission. Hastings Mfg. Co. v. Federal Trade Commission, 153 F2d 253 (1946). Once an order of the commission has been issued, the U. S. Court of Appeals has exclusive jurisdiction to enforce or review an FTC order. 15 USCA § 45 (1963): Federal Trade Commission v. Balme, 23 F2d 615 (1928); National Harness Ass'n v. Federal Trade Commission, 268 F 705 (1920). The FTC was not intended to have plenary power over the interpretation of the statute. The final decision on the meaning of the legislation was entrusted to the judiciary. Federal Trade Commission v. Klesner, 280 US 19 (1929); Sears, Roebuck & Co. v. Federal Trade Commission, 258 F 307 (1919); Florida East Coast Ry. Co. v. United States, 259 F Supp 993 (1966).

A number of decisions have established that the Federal Trade Commission Act does not create a right of action for any private litigant for the unlawful acts proscribed by the statute. Klesner, supra; Samson Crane Co. v. Union Nat. Sales, Inc., 87 F Supp 218 (1949); La Salle St. Press, Inc. v. McCormick & Henderson, Inc., 293 F Supp 1004 (1968). As stated in Klesner, at page 25: "Section 5 [15 USCA § 45] of the Federal Trade Commission Act does not provide private persons with an administrative remedy for private wrongs." Since the purpose of filing a complaint is for the protection of the public interest, a private litigant's first recourse must be to the Commission and not to the courts for a violation of an FTC order. For this reason a civil penalty has been established for a violation of an FTC order, which must be prosecuted by the Attorney General. 15 USCA §§ 45, 56 (1963).

■ ■ From the above analysis we conclude that the Federal Trade Commission was established to vindicate the public interest concerning certain commercial practices. It is clear that a private person is not given a right of action before the commission under the present legislation. Nor can a private litigant base recovery upon the FTC Act or any commission action. Therefore, the plaintiff in the instant case cannot rely upon the FTC order as the sole ground for relief from these contracts. The only significance that can be attributed to this FTC order is the evidentiary value which attaches to said consent order.

As stated above, the trial judge determined that the FTC order in question was to have little weight in his decision. This rested upon the consent nature of the decree and the Commission's rules of practice which established that such agreements are not an admission of wrongdoing. 16 CFR 1.55 (1960). There are no cases directly dealing with the evidentiary value of FTC consent orders. However, there are cases dealing with such FTC orders with regard to their effect upon section 5 of the Clayton Act. 15 USCA § 16 (1963). The first subsection of the statute deals with the admission of judgments or decrees rendered on behalf of the government as prima facie evidence in suits brought by private litigants for recovery of treble damages for violation of the Clayton Act.

The early decision of Proper v. John Bene & Sons, 295 F 729 (EDNY 1923) held that an FTC order was not a final judgment or decree which would allow its introduction as prima facie evidence in a treble damages suit. This court ruled that an FTC order had no effect until a U. S. Court of Appeals had reviewed or enforced the Commission's order. It is not clear, whether the Proper case was dealing with a consent order in its decision. The more recent decision of Carpenter v. Central Arkansas

150

Milk Products Ass'n, Inc., 1966 Trade Cases, ¶ 71,817 (DCWD Ark) held that an FTC order became a final judgment upon the expiration of the time for review, or by virtue of a judgment or decree of a U. S. Court of Appeals in enforcing or reviewing such an order. This case dealt with an order of the FTC and raised the question of collateral estoppel upon the defendant. The court determined that the FTC order was the result of a formal proceeding and after testimony had been introduced before the Commission, so that the findings of that consent order were admissible under section 5 of the Clayton Act.

Thus, a distinction is made as to consent orders where testimony has been introduced and where the consent order is purely an agreement before formal proceedings have been undertaken. This distinction regarding evidentiary value has been recognized by Prof. K. Davis, in his Administrative Law Treatise, § 4.02, footnote 14 (1958), where the author states:

> "With respect to a cause of action or its administrative equivalent, an order based on consent has the same res adjudicata effect as any other order. The difference has to do with collateral estoppel. An order unaccompanied with findings does not bind parties on any issue arising in connection with another cause of action or its administrative equivalent."

This distinction is not recognized when dealing with the remaining subsection of section 5 of the Clayton Act with regard to tolling the statute of limitations. In Minnesota Min. and Mfg. Co. v. New Jersey Wood Finishing Co., 381 US 311 (1965), the court held that an FTC consent order entered before any testimony was introduced would be sufficient to toll the statute of limitations in

order to provide a private litigant the opportunity to bring suit for violation of the Clayton Act.

■ The above analogy to the evidentiary value of FTC orders has a telling effect on the issues of this case. The decision announcing the consent order involved in this appeal reveals that no testimony was introduced and the order was purely a matter of agreement between the Commission and the respondents therein. 57 FTC 306, 312 (1960). Thus, assuming that defendant was a party to that proceeding (an issue which we need not determine), the plaintiff could not assert the doctrine of collateral estoppel to bind the defendant since no such findings based on testimony are present. Therefore, the trial court was justified in disregarding the evidentiary value of the FTC consent order in connection with plaintiff's relief under this contract law aspect of his case. Hence, it is not necessary to reach the question of the applicability of this order to the defendant.

■ Plaintiff's second contention rests upon the law of contracts. He argues that his physical incapacity was good cause for discontinuing his dance instruction and he relies upon the principle that executory contracts are terminable at the will of either party. Defendant's response is that the evidence did not establish the allegations of fraud and overreaching that were alleged in plaintiff's complaint. Further, defendant argues that plaintiff's evidence failed to prove by a preponderance of the evidence any ground for the relief sought in this suit. We are of the opinion that plaintiff's argument with regard to executory contracts is not in point. From our view of the record, these contracts were not wholly executory and were not indefinite as to time for performance. Hence, the case of First Mission Church v. Rockford Broadcasters, Inc., 324 Ill App 8, 56 NE2d 632 (1944) is not applicable to our decision.

■ ■ We note at the outset that plaintiff's complaint sought recovery for the unused hours of dance in-

152

struction which defendant "willfully and maliciously" induced the plaintiff to enter into, by means of relay selling. Our examination of the record leads us to conclude that plaintiff failed to prove any of these allegations. Furthermore, this case does not present a question regarding the mutual consent of the parties to rescission, since the evidence establishes that the defendant did not unequivocally accept the plaintiff's request to abandon the contracts in question. Tucker v. Beam, 343 Ill App 290, 98 NE2d 871 (1951). Lastly, due to a lack of proof as to misrepresentation or mistake of material fact, the equitable principles of rescission are not involved. For this reason we must disregard the case of Highway Com'rs v. City of Bloomington, 253 Ill 164, 97 NE 280 (1911), upon which the plaintiff relies.

Thus, the issues presented are whether the plaintiff's physical incapacity is a sufficient cause for the cancellation of these contracts and whether the proof submitted was sufficient to sustain the plaintiff's recovery by a preponderance of the evidence.

According to learned authority on the subject of rescission:

> "There is no hard and fast rule on the subject of rescission, for the right usually depends on the circumstances of the particular case. It is permitted for failure of consideration, fraud in making the contract, for inability to perform it after it is made, for repudiation of the contract or an essential part thereof, and for such a breach as substantially defeats its purpose." Williston, Law of Contracts, § 1467, pp 187–88 (3rd Ed 1970).

We believe the plaintiff's argument in the case at bar belongs in the category of those principles dealing with impossibility of performance. As stated in the Restatement of Contracts, § 459 (1932):

"A duty that requires for its performance action that can be rendered only by the promisor or some other particular person is discharged by his death or such illness as makes the necessary action by him impossible or seriously injurious to his health, unless the contract indicates a contrary intention or there is contributing fault on the part of the person subject to the duty."

Similarly, section 460 of the Restatement states:

"(1) Where the existence of a specific thing or person is, either by the terms of a bargain or in the contemplation of both parties, necessary for the performance of a promise in the bargain, a duty to perform the promise . . . is discharged if the thing or person subsequently is not in existence in time for reasonable performance, unless a contrary intention is manifested, or the contributing fault of the promisor causes the nonexistence."

This rule has been recognized in this State. Summers v. Hibbard & Co., 153 Ill 102, 38 NE 899 (1894) ; Leonard v. Autocar Sales & Service Co., 392 Ill 182, 64 NE2d 477 (1946).

From the nature of the contracts involved in this case, we are of the opinion that the above rules are applicable. We think it is quite reasonable that the parties contemplated that a term would be implied concerning the continued ability of the plaintiff to take dancing instruction at the defendant's studio. The fact that these lessons were assignable only goes to the ascertainment of damages, which is irrelevant to the issue before this court.

Therefore, this question remains whether the plaintiff introduced sufficient evidence to warrant recovery based on the applicable law. A review of the record discloses that the plaintiff was the only witness who testified as

to the alleged physical incapacity. No corroboration was provided as to his surgery and his doctor's alleged instructions to discontinue lessons. Plaintiff also admitted that prior to and during the time he was taking lessons from 1958 to 1964, he had problems with high blood pressure and a hernia. These were the same ailments which he alleged rendered him incapable of continuing with his dance instruction after 1964.

 We are of the opinion that the proof submitted falls short of that necessary for recovery. The issue of plaintiff's physical incapacity was crucial. This fact allegedly caused the impossibility of the plaintiff to perform and was the appellant's ground for rescission. That fact was not established. The only evidence are the self-serving statements of the plaintiff. Some corroboration or other evidence would be necessary to justify plaintiff's recovery. Although plaintiff's testimony was uncontradicted, the trial court was not required to give credence or accept that testimony as establishing the fact in issue. The inherent improbability of plaintiff's testimony appears when one considers that he was hospitalized and treated for the same physical ailments prior to 1964, yet he continued with his dance instruction regardless of that fact. This court will not upset determinations of fact, creditability of witnesses or the weight to be given testimony by a court sitting without a jury, unless those determinations are manifestly against the weight of the evidence. Gable v. Village of Hinsdale, 87 Ill App2d 123, 230 NE2d 706 (1967); Country Mut. Ins. Co. v. Murray, 97 Ill App2d 61, 239 NE2d 498 (1968). Therefore, we hold that no error was committed as to this issue.

The remaining contention of the plaintiff is that the contracts in question were void as against public policy. Plaintiff relies upon the FTC order of July 1960 and the Health or Dance Studio Services Act of this State. (Ill Rev Stats 1965, c 29, §§ 51–52.) As to the statute,

the pertinent provisions declare that persons who have prepaid money for dance studio services are entitled to refunds when unable to receive such services by reason of death or substantial physical disability. Another provision establishes that contracts which do not comply with the above are void as against public policy.

 The Health or Dance Studio Services Act was effective on May 28, 1965, subsequent to the cause of action in this case. However, plaintiff contends that the statute does not create public policy but merely "expresses" that policy which sought to protect the "unwary from overreaching by the greedy." We do not agree with this contention. One of the basic rules of construction in the law of contracts is that all laws in *existence* when the contract is made are a part of its terms, as if expressly referred to or incorporated. Illinois Bankers Life Ass'n v. Collins, 341 Ill 548, 173 NE 465 (1930). Thus, the statutes must have been in existence when the contract is formed. In the instant case, the statute was effective subsequent to plaintiff's contracts and his claim for a refund. To hold these contracts as void would require a retroactive application of the public policy declared by this statute. The rule is that in the absence of express language to the contrary, legislative enactments are to be construed as prospective and not retrospective. Friedman v. City of Chicago, 374 Ill 545, 30 NE2d 36 (1940); United States Steel Credit Corp. v. Knight, 32 Ill2d 138, 204 NE2d 4 (1965). Accordingly, we do not consider the statute as applicable to the issue of public policy.

 With regard to the FTC consent order, the trial court disregarded that order and found that public policy had not been violated. Plaintiff argues that the FTC order was a part of this State's public policy, relying upon the following statement from Schnackenberg v. Towle, 4 Ill2d 561, 123 NE2d 817 (1954), at page 565:

"There is no precise definition of policy, and consequently no absolute rule of admeasurement, making it necessary to judge and determine each case, as it arises, according to its own peculiar facts and circumstances. It has often been said that the public policy of the State is to be found in its constitution and its statutes, and when cases arise concerning matters upon which they are silent, then in its judicial decisions and the constant practice of government officials."

The determination of public policy has been reserved to this State and is an attribute of sovereignty of this government. Declarations of public policy are premised upon a State's exercise of its police power. Memorial Gardens Ass'n v. Smith, 16 Ill2d 116, 156 NE2d 587 (1959) ; Schuringa v. City of Chicago, 30 Ill2d 504, 198 NE2d 326 (1964). Thus, the FTC order cannot be considered as establishing the public policy for the State of Illinois. That policy was manifested by the enactment of the Health or Dance Studio Services Act, which has no application to the instant case. Moreover, we are of the opinion that a cease and desist consent order of an administrative body which has not been judicially tested is not the type of pronouncement which fits within the accepted definition of public policy. Therefore, the trial court was correct in holding that the above contracts were not void as against public policy.

The judgment of the Circuit Court of Cook County is affirmed.

Judgment affirmed.

BURMAN, P. J. and MURPHY, J., concur.