DEIEN CHEVROLET, INC., Plaintiff-Appellee, v. REYNOLDS AND REY-
NOLDS COMPANY *et al.*, Defendants-Appellants.

Fifth District   No. 5—93—0467

Opinion filed August 25, 1994.—Rehearing denied September 29, 1994.

Andrew Rothschild and Jon A. Santangelo, both of Lewis, Rice & Fing-
ersh, of St. Louis, Missouri, for appellants.

Mark M. Silvermintz, of Carr, Korein, Tillery, Kunin, Montroy & Glass,
of East St. Louis, for appellee.

JUSTICE CHAPMAN delivered the opinion of the court:

Deien Chevrolet, Inc. (plaintiff), brought this action against the
Reynolds and Reynolds Company (Reynolds) and John M. Lee II, an
employee of Reynolds, for fraud in inducing plaintiff to lease a com-
puter system from Reynolds and for forgery. Defendants filed a mo-
tion to dismiss or stay proceedings and to compel arbitration, alleging
that the parties had agreed to arbitrate any contract disputes. The
trial court denied the motion, and the defendants contend that the

trial court's denial of their motion to compel arbitration was not sufficiently supported by the evidence. We reverse.

Plaintiff is an automobile dealership located in Trenton, Illinois. In December 1990, Melvin Deien, the president and owner of Deien Chevrolet, Inc., entered into negotiations with Reynolds to lease a computer system for plaintiff's business. On December 19, 1990, the parties signed a contract, "The Reynolds' Master Equipment Sales, License and Services Agreement" (Master Agreement).

Deien admitted signing a copy of the Master Agreement on December 19, 1990; however, he denied signing the particular contract that was produced by the defendants at his deposition. Mr. Deien also admitted that he signed an "Equipment Lease Agreement" with Reyna Financial Corporation, Reynolds' affiliate, and paid Reynolds an initial payment of $871.16.

The Master Agreement contained an arbitration clause which provided, in pertinent part:

"All disputes between Customer and Reynolds, except those involving: A) Reynolds' ownership of and title to the Licensed Software and Materials and B) Customer's failure to pay any amount due to Reynolds, arising from or related to this Agreement or the Exhibits, shall be conducted by one arbitrator under the commercial arbitration rules of the American Arbitration Association then in effect."

Deien testified that in January 1991 he telephoned Reynolds' office and notified a secretary that he wished to cancel the December 1990 contract. John Lee then contacted Deien and discovered that Deien wished to change his system purchase with Reynolds to add service merchandising to the system, and if he was unable to do that, Deien planned to cancel the contract and purchase a system from Reynolds' competitor. The parties negotiated, and in March 1991 a new system purchase was completed. At that time, plaintiff paid Reynolds $111.25, the difference between the price for the new equipment lease and the payment made on December 19, 1990.

On November 13, 1992, plaintiff filed an amended complaint, which alleged that defendants had fraudulently induced it to acquire a computer system by failing to disclose that the system was reconditioned rather than new. Plaintiff further alleged that the defendants defrauded plaintiff by signing Melvin Deien's name to various documents without his authorization.

On March 17, 1993, the defendants filed a motion to dismiss or stay proceedings and to compel arbitration, based upon the arbitration clause in the Master Agreement. On April 12, 1993, plaintiff responded to the motion and claimed that it did not execute the

Master Agreement produced by the defendants. Plaintiff also claimed that the arbitration clause was inapplicable because the lawsuit was based upon fraud and, therefore, did not arise out of the contract.

On June 8, 1993, the trial court denied the defendants' motion:

"Upon review of written arguments and authority submitted by respective counsel, and the discovery deposition, the Court finds as follows:

1. That the underlying subject matter of this suit is the question of whether a contractual relationship exists.

2. That the defendant has failed to rebut plaintiff's assertion that he canceled any December agreement which may have been reached.

3. That the Court cannot conclude that the parties' subsequent agreement in March, 1991 included an agreement to arbitrate.

By reason of the above, defendants' motion to dismiss is denied. Defendant to answer within 21 days."

A motion to compel arbitration is in the nature of a prayer for injunctive relief, and denial of the motion can be reviewed by an interlocutory appeal pursuant to Illinois Supreme Court Rule 307 (134 Ill. 2d R. 307). (*Clark v. Country Mutual Insurance Co.* (1985), 131 Ill. App. 3d 633, 476 N.E.2d 4.) Review by this court is limited to the issue of whether there was a sufficient showing to sustain the denial of the defendants' motion to dismiss and to compel arbitration. *Nelson v. Roger J. Lange & Co.* (1992), 229 Ill. App. 3d 909, 594 N.E.2d 391.

Defendants argue that the trial court's decision ignores the compelling evidence that the Master Agreement signed by the parties on December 19, 1990, was never cancelled. Defendants argue that Deien never provided Reynolds with written notice of his intent to cancel the December 1990 contract, which provided, "This Agreement shall remain in effect until it is terminated by either party with sixty (60) days['] prior notice to the other party." The Master Agreement set forth the method of notice in paragraph 13.E, which states:

"Except as specifically provided in the Exhibits, any notice required or permitted to be sent under the contract shall be delivered by hand or mailed by registered, certified mail or other receipted delivery service, return receipt requested, to the address of the parties stated in the contract. Notice so sent will be deemed effective when deposited in the mail with proper postage prepaid."

Defendants further argue that once plaintiff admitted to entering into the contract, the question of whether it was cancelled should have gone to arbitration. We agree.

In order to be effective, cancellation of a contract must be done

pursuant to the terms of the contract or by mutual consent of the parties. *Copley v. Pekin Insurance Co.* (1986), 111 Ill. 2d 76, 488 N.E.2d 1004.

In order to cancel the contract pursuant to the terms of the Master Agreement, plaintiff was required to provide written notification to Reynolds, which plaintiff admitted it did not do. Therefore, the only other method of valid cancellation available to plaintiff was cancellation by mutual consent of the parties.

As the Illinois Supreme Court recognized in *Copley*: "Cancellation *** by mutual consent contemplates more than mere communication of intent by one party to the other. Rather, mutual consent requires an agreement *** that both parties are to be excused from the *** contract." *Copley*, 111 Ill. 2d at 86, 488 N.E.2d at 1009. See also *Mor-Wood Contractors, Inc. v. Ottinger* (1990), 205 Ill. App. 3d 132, 562 N.E.2d 1247.

Plaintiff testified that he contacted Reynolds and informed a secretary that he wished to cancel his contract with Reynolds. He also discussed cancellation of the contract with John Lee. However, plaintiff produced no evidence that the parties mutually consented to cancelling the December 19, 1990, agreement. No cancellation exists unless the defendant unequivocally accepts the plaintiff's request to abandon the contract. *Davies v. Arthur Murray, Inc.* (1970), 124 Ill. App. 2d 141, 260 N.E.2d 240.

The record reflects not that the December contract was cancelled but rather that the specific equipment and services to be provided were modified by a subsequent agreement of the parties. These modifications did not affect the Master Agreement, which states in the introductory paragraph:

> "[A]ll Equipment, Licensed Software and Materials and Services obtained from Reynolds, directly or indirectly, are provided only under the terms and conditions of this Agreement. Customer may order Equipment, Licensed Software and Materials and Services by executing an appropriate Reynolds Exhibit, subject to acceptance by Reynolds. The terms and conditions of an accepted Exhibit also shall apply to the Equipment, Licensed Software and Materials and Services provided under that Exhibit."

The Master Agreement provided the general rights and obligations of the parties; the specific services and equipment which are purchased by the customer and the price terms are then set forth in the exhibits. Modifications to the system are accomplished through execution of exhibits.

Furthermore, the conduct of the parties does not support plaintiff's assertion that the contract was cancelled. Plaintiff issued a

check to Reynolds on December 19, 1990, as the initial payment under the original Master Agreement. On or about March 21, 1991, Deien Chevrolet issued a second check for an initial balance due for the additional equipment lease. Reynolds provided the equipment and services to plaintiff following this payment. At no time did plaintiff request a refund of the original payment made in December 1990; nor did plaintiff ever stop payment on that check. In fact, the second check issued by plaintiff was written as a supplemental payment to cover additional costs for the system changes. Plaintiff's failure to cancel the first check and its issuance of a second check are actions inconsistent with cancellation of the contract.

We conclude that this conduct demonstrates the parties' intent to modify the original system purchase agreement. Such a modification did not affect the terms of the Master Agreement. Under Illinois law, parties to a contract may modify provisions of the contract without affecting their liabilities under the other terms of the agreement. (*Nagle v. General Merchandising Corp.* (1978), 58 Ill. App. 3d 344, 374 N.E.2d 1137.) The terms of the Master Agreement were still in effect after the parties modified the system's purchase. Plaintiff's claim that the parties mutually consented to cancel the contract is against the manifest weight of the evidence. Therefore, we reverse and remand this case to the trial court with directions to grant the defendants' motion to compel arbitration as to plaintiff's claims against Reynolds.

This reversal does not, however, apply to plaintiff's claim against John Lee, since he was not a party to the arbitration agreement. Therefore, we affirm the trial court's denial of Lee's motion to compel arbitration.

Affirmed in part, reversed in part and remanded with directions.

LEWIS, P.J., and RARICK, J., concur.