Beverly **NORMAND**, Plaintiff–
Appellant,

v.

**ORKIN EXTERMINATING COMPA-
NY, INC.**, Defendant–Appellee.

No. 98–4111.

United States Court of Appeals,
Seventh Circuit.

Argued Aug. 3, 1999.

Decided Oct. 12, 1999.

Elijah I. Meshiah (argued), Chicago, IL, for Plaintiff–Appellant.

James T. Hultquist (argued), Dan J. Hofmeister, Jr., Brand & Novak, Chicago, IL, for Defendant–Appellee.

Before POSNER, Chief Judge, and EASTERBROOK and MANION, Circuit Judges.

POSNER, Chief Judge.

This diversity breach of contract suit (the substantive issues in which are governed by Illinois law) began with the filing in an Illinois state court three years ago of a complaint by Beverly Normand against Orkin Exterminating Company alleging that in 1992 the parties had made a contract by which Orkin had agreed to protect Normand's home from termites. The contract price was $1,333 for an initial treatment of the home and $149 a year for annual inspections. The contract, which was for one year but was renewable indefinitely, included a "re-treatment guarantee" explicitly limited to the cost of re-treating the premises (should they become infested by termites); Orkin was to have no "liability for any claim for damages to the structure or its contents occasioned by an infestation of [termites], or otherwise caused by ORKIN's negligence or breach of any other obligation arising under the terms of the Agreement."

The complaint alleges that "the initial treatment broke overhead water pipes and ruined the floor which Orkin did not repair," and that in 1995 Normand reported termite infestation to Orkin, which did nothing about it and as a result the home sustained "damage [that] may be unrepairable and exceed costs of approximately $100,000.00, which is the assessed value of the house." The complaint seeks a judgment for $100,000, and other relief, for breach of contract. A second count, for negligence, seeks the same amount and a third count, which claims that Orkin in the performance—or rather non-performance—of the contract acted willfully, wantonly, and maliciously, seeks an additional $300,000 in punitive damages.

Orkin removed the case to federal court and filed an answer in which it pleaded as an affirmative defense the contractual limitation of liability that we have quoted. Discovery followed, and it turned out that Normand had borrowed the money to pay for the termite contract from Rollins Acceptance Corporation but had failed to make any payments to Rollins, in consequence of which Rollins had charged back to Orkin the entire sum of money that it had paid Orkin for services to Normand's home. Normand not only failed to pay the contract price; she failed to pay for any annual inspections, even though the contract made such payments a condition precedent to the renewal of the contract after its expiration. Nevertheless, Orkin inspected Normand's home for termites in 1993, 1994, and 1995.

The district judge granted summary judgment for Orkin, ruling that having never paid Orkin either directly or (after the charge back) through Rollins, Normand had not fulfilled her side of the bargain and so could not maintain a breach of contract suit. The judge further ruled that Normand had presented no evidence of negligence. She dismissed the entire suit as meritless.

The first question, which is addressed neither by the parties nor by the district judge, is whether the district court ever acquired jurisdiction. When the notice of removal was filed, the minimum stakes required for a diversity suit were $50,000, and the complaint asks for considerably more. But the contract limits Orkin's liability, not only for breach of contract but also for negligence arising from performance of the contract, to the cost of retreatment, which is certainly less than $50,000 and probably does not exceed $2,000. The district court did not mention the limitation of liability, however, nor did Normand in her appeal brief. Orkin tendered it as an alternative ground for upholding the district court's action in dismissing the suit but did not argue that this showed that the case failed to come up to the minimum required amount in controversy. Obviously Orkin would prefer us to affirm the district court rather than, by holding that there is no federal jurisdiction, to return the case to the state court, permitting Normand to start over. Normand filed no reply brief and at argument her lawyer, while contending that the limitation of liability is unenforceable, offered no reasoning or authority in support of his contention.

■■■ To maintain a suit in which the stakes must exceed some specified minimum, the plaintiff (or the defendant, if the suit is removed) need demonstrate no more than a good faith, minimally reasonable belief that the suit might result in a judgment in excess of that amount. *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 288–89, 58 S.Ct. 586, 82 L.Ed. 845 (1938); *Herremans v. Carrera Designs, Inc.*, 157 F.3d 1118, 1121 (7th Cir.1998); *Pace Communications, Inc. v. Moonlight Design, Inc.*, 31 F.3d 587, 591 (7th Cir.1994); *Wolde–Meskel v. Vocational Instruction Project Community Services, Inc.*, 166 F.3d 59, 63 (2d Cir.1999). If there is a clearly valid limitation on liability which reduces the maximum possible judgment below the specified statutory minimum, the suit cannot be maintained. *Pratt Central Park Limited Partnership v. Dames & Moore, Inc.*, 60 F.3d 350, 353 (7th Cir.1995); *Valhal Corp. v. Sullivan Associates, Inc.*, 44 F.3d 195, 209 (3d Cir. 1995). Although contractual limitations on liability are not always enforced, Normand does not argue that the limitation in its contract with Orkin is invalid or deny that it extends to negligence in the performance of Orkin's contractually undertaken duty to protect Normand's home from termites.

So if that were all there was to the case we would have to vacate the judgment and remand with directions to dismiss Normand's suit for want of jurisdiction. But there is more. Normand alleges that Orkin acted maliciously, and explains in her brief that Orkin knew all along that the

house was infested but misrepresented it to be free from termites in order to avoid having to honor its guarantee. It is doubtful that a contractual limitation of liability would be held to be a bar to fraud, cf. *Moorman Mfg. Co. v. National Tank Co.*, 91 Ill.2d 69, 61 Ill.Dec. 746, 435 N.E.2d 443, 452 (Ill.1982), and as neither the district court nor Orkin has deigned even to address this aspect of Normand's case we cannot assume it to be utterly without merit, and it might conceivably support a judgment for consequential or even punitive damages, *Home Savings & Loan Ass'n v. Schneider*, 108 Ill.2d 277, 91 Ill. Dec. 590, 483 N.E.2d 1225, 1228 (Ill.1985), notwithstanding the limitation of liability. Granted, Normand's failure to connect its charge of malice with a possible defense to the limitation on liability may have worked a waiver, but that is a different question from whether the limitation is so securely lawful that when the case was removed it was clear that the stakes did not satisfy the jurisdictional minimum. Nor is it clear that the defense *was* waived. The district court found no contractual liability at all, without considering the effect of the limitation of liability; and the appellee's brief in this court does not consider the bearing of count three (the malice count) on the validity of the limitation.

■ Since the malice count may entitle Normand to an award of punitive damages which might exceed $50,000, we need not scratch our heads too hard over her demand for compensatory damages of $100,-000, grossly excessive as that figure appears to be. How could termites have inflicted a $100,000 loss on a $100,000 house, when, after the termites were discovered, the assessed value of the house, according to Normand's lawyer, was $85,-000? The maximum award of compensatory damages is the cost of repair or restoration, or the difference between the original appraised value and the post-termite value, whichever is less. *Gardynski–Leschuck v. Ford Motor Co.*, 142 F.3d 955 (7th Cir. 1998). That implies that Normand's com-

pensatory damages do not exceed $15,000. Maybe, however, though this seems highly unlikely, the $85,000 appraisal was made right after the termites were first discovered, and Orkin's subsequent and ineffectual efforts allowed the house to be completely devoured by the critters.

■ We conclude with some misgivings that the case is at least tentatively within federal jurisdiction (the jurisdictional issue can be revisited on remand, should it turn out that the malice count is completely groundless and the maximum good-faith estimate of the compensatory damages does not exceed $50,000). But before proceeding to the merits, we note another procedural problem, namely a false certificate of compliance with our Rule 30(d), which requires that the appellant's appendix contain specified materials including the decision of the district court. The appellant's brief certifies compliance with the rule but omits the decision of the district court, in clear violation of it. When this omission was drawn to the attention of Normand's lawyer at argument, he was unable to offer any excuse other than sheer oversight. For this violation, an appropriate but not mandatory penalty is summary affirmance. *Hibben v. Nardone*, 137 F.3d 480, 481 n. 1 (7th Cir.1998); *United States v. Evans*, 131 F.3d 1192, 1194 (7th Cir.1997). But as this appears to be a case in which a lawyer inexperienced in federal litigation was, as it were, dragged kicking and screaming into federal court by a notice of removal, we are disinclined to impose so fell a penalty. Ignorance of the law, especially by a lawyer, is no defense to noncompliance with the rules of the court in which he appears. But here, as in *Hill v. Porter Memorial Hospital*, 90 F.3d 220, 225–27 (7th Cir. 1996), since the client is not implicated in the lawyer's violation of the rule, fining the lawyer seems to us a more appropriate sanction than dismissal of the appeal.

■ Turning to the merits, we find ourselves puzzled that the district court's sole ground for rendering judgment for Orkin

was the supposed rule that to maintain a suit for breach of contract the plaintiff must have performed his, or in this case her, obligations under the contract. Language suggestive of such a rule can be found in some old cases, for example *Baird v. Evans*, 20 Ill. 29 (1858), but judicial generalizations must be understood in context; *Baird* was a case in which the plaintiff's performance was a condition precedent to his being able to complain about a breach by the defendants. If the rule were as stated, there could never be a suit for breach of an executory contract, in which, by definition, neither side has begun to perform. There could be no suit for anticipatory repudiation either. *Baird* shows that the failure of one party to a contract to perform may excuse nonperformance by the other, e.g., *Contract Development Corp. v. Beck*, 255 Ill.App.3d 660, 194 Ill.Dec. 423, 627 N.E.2d 760, 765 (Ill. App.1994); *Wilmette Partners v. Hamel*, 230 Ill.App.3d 248, 171 Ill.Dec. 657, 594 N.E.2d 1177, 1186–87 (Ill.App.1992), but that is just the familiar doctrine of contract conditions and is a far cry from the flat rule here asserted that you cannot (if the paying party) sue for breach until you've paid up. In every case cited by Orkin, the plaintiff's failure to perform was found to be an excusing condition, and no such finding has been made here. *Christopher v. West*, 409 Ill. 131, 98 N.E.2d 722, 725 (Ill.1951); *George F. Mueller & Sons, Inc. v. Northern Illinois Gas Co.*, 32 Ill. App.3d 249, 336 N.E.2d 185, 189 (Ill.App. 1975); *F.E. Holmes & Son Construction Co. v. Gualdoni Electric Service, Inc.*, 105 Ill.App.3d 1135, 61 Ill.Dec. 883, 435 N.E.2d 724, 727 (Ill.App.1982).

A better ground for rejecting Normand's claim would have been that she failed to pay the annual inspection fee, a condition precedent to the renewal of the contract. Yet Orkin continued to make the inspections, just as if the contract had been renewed; one of Orkin's inspectors testified that he reinspected Normand's house in 1995 and that "to the best of his knowledge" she was a customer then. Orkin may thus have waived the condition precedent, and it has never argued that the contract forbids the waiver of any of its terms. Alternatively, Orkin may have modified the contract (which contains no limitation on modification by course of performance or otherwise), forbearing to cancel it, or to charge for the annual inspections, in exchange for Normand's agreeing to forbear from immediate suit. *Deien Chevrolet, Inc. v. Reynolds & Reynolds Co.*, 265 Ill.App.3d 842, 203 Ill.Dec. 390, 639 N.E.2d 949, 951–52 (Ill.App.1994). (This is conjecture; issues of waiver or modification remain to be sorted out on remand.)

■ The district court was right to dismiss Normand's claim of negligence, not only because the only evidence was the report of a termite inspector that "the house structural system has been extremely damaged by termite infestation," which establishes injury but not negligence, but also because Illinois law does not permit a suit for breach of contract to be recast as a tort suit. *Moorman Mfg. Co. v. National Tank Co.*, *supra*; *Fence Rail Development Corp. v. Nelson & Associates, Ltd.*, 174 Ill.App.3d 94, 123 Ill.Dec. 799, 528 N.E.2d 344, 348 (Ill.App.1988); *Anderson Electric, Inc. v. Ledbetter Erection Corp.*, 133 Ill. App.3d 844, 88 Ill.Dec. 863, 479 N.E.2d 476, 480–81 (Ill.App.1985). The case must however be remanded for further consideration of the breach of contract and malice claims. Should Normand prove a breach of contract but fail to establish the unenforceability (because of malice or misrepresentation) of the contractual limitation of liability, the limitation will cap her damages at the cost of re-treating the house to get rid of the termites.

Normand's counsel is ordered to show cause within 14 days of this decision why he should not be fined $1,000 for his violation of Circuit Rule 30. *Hill v. Porter Memorial Hospital*, *supra*, 90 F.3d at 227.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED; ORDER TO SHOW CAUSE ISSUED.