

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-7-2007

# Prof Cleaning v. Kennedy Funding Inc

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-1405

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Prof Cleaning v. Kennedy Funding Inc" (2007). *2007 Decisions.* Paper 608.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/608

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————————

No. 06-1405

———————————

PROFESSIONAL CLEANING AND INNOVATIVE
BUILDING SERVICES, INC.,

Appellant,

v.

KENNEDY FUNDING, INC.

———————————

On Appeal From the United States District Court
for the District of New Jersey
(No. 05-cv-02384)
District Judge: Honorable William J. Martini

Submitted Under Third Circuit LAR 34.1(a)
March 29, 2007

Before: RENDELL, BARRY and CHAGARES, *Circuit Judges*.

(Filed: August 7, 2007)
———————————

OPINION OF THE COURT
———————————

1

CHAGARES, *Circuit Judge*.

This case comes before us with a tortured procedural history that requires some explanation, though we assume the parties' familiarity with the factual and legal background. Plaintiff-appellant Professional Cleaning and Innovative Building Services, Inc. ("Professional") appeals from the District Court's order of December 30, 2005, which affirmed the Magistrate Judge's order of September 27, 2005 refusing to reconsider the order of August 29, 2005, which denied Professional's motion to file an amended complaint.[1] We conclude that the District Court erred in reasoning that the proposed amended complaint failed to sufficiently plead a claim for common-law fraud and a claim under the New Jersey Consumer Fraud Act ("NJCFA"), N.J. Stat. Ann. § 56:8-1 et seq., providing the possibility for punitive or treble damages.[2] Reversal of this

---

[1] Professional's appeal challenges what is effectively the denial of its motion to amend the complaint. Professional did not appeal the District Court's order of August 11, 2005, which granted defendant's motion to dismiss the complaint for lack of subject matter jurisdiction. Appeal from this order is not before us. However, because subject matter jurisdiction cannot be waived, we have an independent obligation to satisfy that jurisdiction exists. We conclude that the proposed amended complaint cures any jurisdictional defects that may have been present in the original complaint.

[2] Punitive damages can be aggregated with compensatory damages to arrive at the amount in controversy requirement. See Golden ex rel. Golden v. Golden, 382 F.3d 348, 355 (3d Cir. 2004) ("Claims for punitive damages may be aggregated with claims for compensatory damages unless the former are patently frivolous and without foundation. . . . If appropriately made, therefore, a request for punitive damages will generally satisfy the amount in controversy requirement because it cannot be stated to a legal certainty that the value of plaintiff's claim is below the statutory minimum."). We have also previously held that treble damages may be included when calculating the amount in controversy for

2

aspect of the District Court's order is therefore required. We will, however, affirm the Court's decision with respect to Professional's claim for breach of the covenant of good faith and fair dealing. We will remand for further proceedings consistent with this opinion.

I.

Professional is a Missouri corporation with its principal place of business in Kansas City, Missouri, in the business of purchasing, leasing, and maintaining commercial property. Professional sought financing in order to purchase commercial property in Kansas. The terms of the deal required a quick closing. Defendant-appellee Kennedy Funding, Inc. ("Kennedy") is a corporation organized and existing under the laws of the State of New Jersey. Kennedy's principal place of business is in Hackensack, New Jersey. Kennedy is a "hard-money" lender[3] that provides financing to companies with time-sensitive needs.

The relationship between Professional and Kennedy soured after it became clear to

_____

the purpose of subject matter jurisdiction if it appears that the plaintiff is not precluded to a legal certainty from recovering under the NJCFA. Suber v. Chrysler Corp., 104 F.3d 578, 587 (3d Cir. 1997). Furthermore, when state law provides for the recovery of attorneys' fees by a successful plaintiff, those fees must be considered in calculating the jurisdictional amount in controversy. Id. at 585 (citing Missouri State Life Ins. Co. v. Jones, 290 U.S. 199, 202 (1933)).

[3] A hard-money lender is one that lends money as a last resort to borrowers who cannot get loans from other mainstream institutions because of severe time constraints or other reasons, such as lack of acceptable credit. See, e.g., Gary W. Eldred, Make Money with Fixer-Uppers & Renovations 255-57 (2003).

3

Professional that, despite expressly discussing the need for a $1,800,000 loan collateralized by the Kansas property which Professional estimated would appraise at $3,100,000 and, despite paying a non-refundable commitment fee of $54,000 prior to the appraisal of the Kansas property, Professional was not going to get the amount of financing it needed for the Kansas property – or its fee returned.

On May 5, 2005, Professional filed this diversity action against Kennedy. The complaint alleged a violation of the NJCFA, as well as state law claims for unconscionability, breach of the covenant of good faith and fair dealing, and breach of contract. Professional claimed damages of approximately $65,000[4] plus attorneys' fees and costs. Additionally, Professional sought treble damages under the NJCFA, which provides that "[i]n any action under this section the court *shall*, in addition to any other appropriate legal or equitable relief, award threefold the damages sustained by any person in interest. In all actions under this section, including those brought by the Attorney General, the court *shall* also award reasonable attorneys' fees, filing fees and reasonable costs of suit." N.J. Stat. Ann. § 56:8-19 (emphasis added).

Kennedy moved to dismiss the complaint for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). Kennedy's sole argument was that Professional failed to meet the amount in controversy requirement for jurisdiction because the loan

---

[4] Damages included a $54,000 non-refundable commitment fee, $5,000 for legal fees paid to Kennedy for the loan preparation, and a total of $6,000 for appraisal fees.

commitment agreement contained a limitation of damages clause which limited any recovery to the amount of the commitment fee, here $54,000. Professional responded that Kennedy's contractual limitation-of-liability clause is not enforceable because Kennedy's allegedly fraudulent and unconscionable practices violate the NJCFA.

On August 11, 2005, the District Court ruled in favor of Kennedy and dismissed the Complaint for lack of jurisdiction. The Court stated, "Since plaintiff has insufficiently pled a cause of action under the [NJ]CFA, the limitation on damages clause remains in effect and it appears to a legal certainty that no recovery in excess of the jurisdictional amount is possible." 5a. The Court concluded that Professional had not made a sufficient showing of any unlawful conduct on the part of Kennedy, reasoning that both parties were commercial entities and that the loan commitment agreement was clear and unambiguous.

On August 24, 2005, Professional moved under Fed. R. Civ. P. 59(e) to set aside the August 11, 2005 order and to amend the complaint, pursuant to Fed. R. Civ. P. 15(a). Professional's proposed amended complaint contained further allegations in support of its NJCFA claim as well as new claims including common-law fraud and unjust enrichment. Professional claimed that Kennedy was liable for punitive damages under the common-law fraud claim. The motion was summarily dismissed on August 29, 2005. Although no reason was given for the dismissal, it appears that the Magistrate Judge mistakenly considered the motion as having been filed after the requisite ten-day time period had

5

passed. However, pursuant to Fed. R. Civ. P. 6(a), it is clear that the motion was timely filed.

On September 9, 2005, Professional filed a motion for reconsideration of the August 29, 2005 order denying its motion to amend. Kennedy opposed the motion. On September 27, 2005, the Magistrate Judge denied the motion for reconsideration stating, "Plaintiff has failed to demonstrate that Rule 59(e) is [the] appropriate vehicle to reallege jurisdictional facts after [the] complaint [was] dismissed for lack thereof." 10a.

On October 11, 2005, Professional appealed the Magistrate Judge's order denying reconsideration. The District Court held a hearing on December 14, 2005. On January 3, 2006, the District Court entered an order in which it correctly concluded that the September 27, 2005 order was contrary to applicable law. However, the District Court affirmed the decision to deny the motion to amend based alternatively on consideration of futility. The Court held that

> Professional's proposed amended complaint fails to remedy the deficiencies found in the original complaint. It has not sufficiently stated a case under the CJA [sic] or common law fraud nor has it alleged any other cause of action that would entitled it to recover in excess of $75,000. As such, this Court finds to a legal certainty that Professional cannot recover in excess of the jurisdictional amount, and that this Court cannot assert subject matter jurisdiction over this matter.

(16a.) On January 26, 2006, Professional filed a timely appeal to this Court.

## II.

We review the District Court's denial of a motion for leave to amend a complaint

6

for abuse of discretion. In re Adams Golf, Inc. Sec. Litig., 381 F.3d 267, 280 (3d Cir. 2004) (citing Cureton v. Nat'l Collegiate Athletic Ass'n, 252 F.3d 267, 272 (3d Cir. 2001)). Leave to amend a pleading "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). Liberality is the keystone of Rule 15(a). Allowing amendments in order to correct deficiencies in pleadings furthers one of the basic objectives of the federal rules – the determination of cases on their merits. "[U]nder the liberal pleading philosophy of the federal rules as incorporated in Rule 15(a), an amendment should be allowed whenever there has not been undue delay, bad faith on the part of the plaintiff, or prejudice to the defendant as a result of the delay." Adams v. Gould Inc., 739 F.2d 858, 867-68 (3d Cir. 1984).

Futility is another basis for denying a motion to amend, Alvin v. Suzuki, 227 F.3d 107, 121 (3d Cir. 2000), and the one applied by the District Court in this instance. "An amendment is futile if the amended complaint would not survive a motion to dismiss for failure to state a claim upon which relief could be granted." Id. "[I]f a claim is vulnerable to dismissal under Rule 12(b)(6), but the plaintiff moves to amend, leave to amend generally must be granted unless the amendment would not cure the deficiency." Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000). Here, the District Court ruled that the proposed amended complaint was futile because Professional "failed to allege misrepresentation, deception, or any other conduct by Kennedy that might support a claim of common law fraud or a violation of the [NJ]CFA." 15a. We discuss each claim

7

seriatim.[5]

The elements of a cause of action under the NJCFA are (1) unlawful conduct by the defendant; (2) an ascertainable loss by the plaintiff; and (3) a causal relationship between the unlawful conduct and the loss. Carton v. Choice Point, 482 F. Supp. 2d 533, 535 (D.N.J. 2007) (citing Cox v. Sears Roebuck & Co., 138 N.J. 2, 24 (1994)). The NJCFA defines an "unlawful practice" broadly as:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby . . . .

N.J. Stat. Ann. § 56:8-2. "Courts have emphasized that like most remedial legislation, the [NJCFA] should be construed liberally in favor of consumers." Cox, 138 N.J. at 15. The conduct specified in the NJCFA as amounting to an unlawful practice is disjunctive. Id. at 19. Therefore, "[p]roof of any one of those acts or omissions or of a violation of a regulation will be sufficient to establish unlawful conduct under the Act." Id.

In the proposed amended complaint, Professional alleged that Kennedy engaged in an  unconscionable commercial practice when it required the $54,000 non-refundable

---

[5] We agree with the District Court's ruling regarding Professional's claim for breach of the covenant of good faith and fair dealing. Accordingly, we conclude that the District Court did not abuse its discretion in denying the motion to amend as to this cause of action.

8

fee even before appraisal of the property and then refused to return the fee when, despite knowing of Professional's need for $1,800,000, Kennedy offered a loan amounting to much less. Professional alleges that Kennedy made misrepresentations and knowingly concealed, suppressed or omitted material facts when, during an initial conference call, Kennedy stated that it would loan Professional 60% of the *appraised value* of the property which Professional told Kennedy it estimated to be $3,100,000. Kennedy allegedly did not explain that the loan would be based on a different formula which would reduce the appraised value of the property by approximately 20% to arrive at the "as is market value," which Kennedy would then further reduce by 40% to arrive at its loan amount. Even our rough calculation reveals that reducing an appraisal of $3,100,000 by 20% to arrive at the "as is market value" would not yield the necessary $1,800,000 in financing. In fact, the loan would be short by over $300,000. Professional claims that Kennedy knew at the time of this conversation that if it applied its "as is market value" formula to Professional's property, it would not be able to offer the financing Professional sought.

The proposed amended complaint further states that it was not until Professional's CEO, Brenda Wood, received the loan commitment papers that she discovered that the formula for the loan was different than her earlier expectation. She alleges that she contacted Kennedy by telephone to inquire into the meaning of "as is market value," which is nebulously defined in the contract as "a three (3) to four (4) month sale to a

9

cash buyer." 51a. Ms. Wood claims that Kennedy verbally assured her that Professional would get the funding it needed. Relying on Kennedy's assurances, Professional wired the $54,000 commitment fee plus an additional $10,000 to cover the preparation of the loan, as well as $5,000 in legal fees and $6,000 in appraisal fees paid directly to Kennedy. We hold that these allegations are sufficient to state an NJCFA claim under the liberal standard applied to a motion to amend.

We reach a similar conclusion regarding the common-law fraud claim. The elements of common-law fraud are: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." Gennari v. Weichert Co. Realtors, 148 N.J. 582, 610 (1997) (citing Jewish Ctr. of Sussex County v. Whale, 86 N.J. 619, 624-25 (1981)). As with the NJCFA claim, the District Court determined that Professional "failed to allege misrepresentation, deception, or any other conduct by Kennedy that might support a claim of common law fraud." 15a.

"In all averments of fraud . . . the circumstances constituting fraud . . . shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed. R. Civ. P. 9(b). Here, the proposed amended complaint alleges with sufficient particularity that Kennedy misrepresented the meaning of the "as is market value" formula to induce Professional into signing the contract in

10

order to extract from Professional its non-refundable commitment fee. The averments supporting the common-law fraud claim overlap with those supporting the NJCFA claim, but we reiterate them nonetheless. Professional claims Kennedy knew of its urgent need to raise $1,800,000 and that Professional sought to collateralize the loan with property it estimated would appraise for $3,100,000. Professional claims that during a conference call with Kennedy, Kennedy stated that it would loan Professional 60% of the appraised value of the Property. Professional contends that there was no mention of any alternative valuation formula during this conversation. According to Professional, Kennedy must have known at this point that, under its "as is market value" formula, it would not offer Professional the necessary $1,800,000. Finally, Professional alleges that it contacted Kennedy with questions about the "as is market value" formula prior to sending the $54,000 commitment fee and was assured by Kennedy that Professional would get the funding it needed. Professional claims it relied on these assurances to proceed with the loan process, including sending its non-refundable commitment fee payment.

Kennedy posits a number of arguments in defense, among them, that the contract was clear and unambiguous as to the valuation formula to be applied and that the parties were sophisticated business entities who engaged in arm's-length negotiations. In fact, the District Court held that the contract "was clear, unambiguous, and laid out clearly the terms of the loan." 13a. But, on a motion to amend, the Court applies the same standard of legal sufficiency as exists under Rule 12(b)(6). Shane, 213 F.3d at 115. Thus, we

11

look only at whether the plaintiff's allegations, taken as true, state a claim upon which relief may be granted. We have concluded they do. It is besides the point, at this procedural posture, whether the contract was clear or not. Upon inquiring into the meaning of "as is market value," Professional was allegedly told not to worry, the financing it needed would be forthcoming. Professional pursued the loan based on this assurance. Professional alleges that "[d]espite [Kennedy's] failure to share the formula for calculating the 'as is' market value, Volpe, Inc.'s Evaluation reveals that there is a 20% discount applied to calculate a value for a 'cash sale to a buyer in 90 to 120 days' value." 23a. But, Volpe's appraisal was not presented to Professional until *after* it had paid the $54,000 fee and costs. Thus, Professional claims that in response to its question asking Kennedy for its valuation formula *before* sending the commitment fee, a signal that the contract was not so clear, Kennedy intentionally misrepresented to Professional that it would get its needed financing so as to collect the non-refundable fee. The fact that Kennedy offered to loan Professional $1,458,000 also misses the point. Kennedy was aware that Professional urgently needed $1,800,000 to close on the property it wished to purchase. A loan for less would have been meaningless to Professional, who had turned to Kennedy as a lender of last resort. Professional is alleging what amounts to a bait-and-switch scheme. Under these circumstances, it was an abuse of discretion not to allow Professional to amend its complaint.

Finally, the contract contains a limitation-of-liability clause, limiting damages to

12

the $54,000 commitment fee. It was on this basis that the District Court dismissed the action for lack of subject matter jurisdiction; that being, a failure to allege the necessary amount in controversy under 28 U.S.C. § 1332. The District Court held that the limitation-of-liability clause was enforceable because Professional failed to plead a cause of action under the NJCFA or common-law fraud.

In New Jersey, parties to a contract may agree to limit their liability as long as the limitation does not violate public policy. Mayfair Fabrics v. Henley, 48 N.J. 483, 487 (1967). The law is well-settled that fraud, be it common law or statutory, provides a basis for rescinding a contract. See First Am. Title Ins. Co. v. Lawson, 177 N.J. 125, 136 (2003); Restatement (Second) Contracts § 164 ("If a party's manifestation of assent is induced by either a fraudulent or a material misrepresentation by the other party upon which the recipient is justified in relying, the contract is voidable by the recipient."). If Professional were deceived into entering the contract by Kennedy's alleged misrepresentations and omissions, Kennedy "could not rely on the protection of the limitation of liability provision contained in the [contract]." Wärtsilä NSD North Am. Inc. v. Hill Int'l Inc., 342 F. Supp. 2d 267, 289, 290 (D.N.J. 2004) ("[A]s the Fraud count will go to the jury, the Court cannot dispose of the Breach of Contract claim based on the limitation-of-liability clause contained in the agreement."); see also Valhal Corp. v. Sullivan Assocs., Inc., 44 F.3d 195, 203-04 (3d Cir. 1995) (dismissing for want of jurisdiction after deciding that a limitation-of-liability clause capped damages at less

13

than the jurisdictional amount in controversy, but noting that the limitation-of-liability clause would not be enforceable if the damage were caused by willful, malicious, or wanton conduct); accord Normand v. Orkin Exterminating Co., 193 F.3d 908, 910-11 (7th Cir. 1999) (where claim is premised on malicious misrepresentation, "[i]t is doubtful that a contractual limitation of liability would be held to be a bar to fraud . . . and it might conceivably support a judgment for consequential or even punitive damages, notwithstanding the limitation of liability") (internal citations omitted); Turkish v. Kasenetz, 27 F.3d 23, 27-28 (2d Cir. 1994) ("It is well settled that parties cannot use contractual limitation of liability clauses to shield themselves from liability for their own fraudulent conduct.") (citation omitted). We have concluded that Professional's proposed amended complaint states claims for fraud under the NJCFA and the common law. If Professional ultimately prevails on these claims, the limitation-of-liability clause in the contract will not afford Kennedy protection. Thus, at this stage of the proceedings, it would be premature to apply the limitation-of-liability clause to preclude federal jurisdiction.

## III.

We conclude that the District Court erred in denying Professional's motion to amend the complaint as it relates to the NJCFA and common-law fraud claims. The proposed amended complaint also contained claims for breach of contract, unconscionability, and unjust enrichment. The District Court did not address these

14

claims in its order of December 30, 2005. Therefore we consider them included in the amended pleading. The District Court did not abuse its discretion in denying the motion to amend as to the claim for breach of the covenant of good faith and fair dealing. We remand to the District Court for further proceedings consistent with this opinion.